IN THE SUPREME COURT OF MISSISSIPPI
NO. 2000-DP-00341-SCT

*DALE LEO BISHOP*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 02/04/2000 |
| TRIAL JUDGE: | HON. FRANK A. RUSSELL |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID LEE DANIELS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  MARVIN L. WHITE, JR. |
| | JUDY T. MARTIN |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY- DIRECT APPEAL |
| DISPOSITION: | AFFIRMED - 02/14/2002 |
| MOTION FOR REHEARING FILED: | 2/28/2002; denied 4/11/2002 |
| MANDATE ISSUED: | 4/18/2002 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Marcus James Gentry was brutally murdered on a dirt road in Lee County, Mississippi, not far from the town of Saltillo on the night of December 10, 1998. Dale Leo Bishop and Jessie Dewayne Johnson were indicted by a Lee County Grand Jury for capital murder. The two defendants were tried separately. A jury found Bishop guilty of capital murder, with the underlying felony being kidnaping. Bishop and the State waived a jury trial as to sentencing. At sentencing, the circuit judge, finding beyond a reasonable doubt that Bishop contemplated that lethal force would be used and that the especially heinous, atrocious or cruel aggravating circumstance was proven, sentenced Bishop to death. We affirm the judgment of the Lee County Circuit Court.

## FACTS[1]

¶2. About 10:30 p.m. on the evening of December 10, 1998, Gentry, Bishop, Jessie Johnson, Cory Johnson, and Charlie Rakestraw went to Ricky Myhand and Rachel Dobbs's apartment in Saltillo. Jessie, Bishop's co-defendant, and Cory were brothers. After drinking a couple of beers, Jessie decided to go to a store for more beer and asked Myhand to go along. Gentry, who had driven his vehicle to Myhand's apartment, drove Jessie, Bishop and Myhand to the store. Upon reaching their destination, they discovered that the store was closed, so Gentry turned around and headed back toward Myhand's apartment.

¶3. On the way back, Jessie, who was seated in the front passenger seat, asked Gentry why he "narced" or

"ratted on" his little brother.[2] Gentry denied doing so. Jessie said, "Yeah, you did," then reached down to the floorboard, grabbed a hammer and hit Gentry between the eyes.[3] The car coasted to a stop and Gentry begged Jessie not to hit him again. Bishop, who was seated behind Gentry, grabbed Gentry in a headlock and hit him. While he was being held, Jessie struck Gentry in the head again with the hammer.[4] Bishop and Jessie next made Gentry move over into the front passenger's seat, and Jessie began driving. He turned off the road and went down a little field road. When Jessie stopped the vehicle, Gentry jumped out of the car and ran. Jessie told Bishop to catch him.

¶4. After about five minutes Bishop came back with Gentry and forced him to get on his knees in front of the car. Bishop and Jessie began kicking Gentry. Jessie struck Gentry numerous times with the hammer. At one point Myhand was asked to hold Gentry while Bishop retrieved beers for himself and Jessie. In response, Myhand begged Jessie to stop. When they finished, Bishop had to dislodge the hammer from Gentry's throat, and then he and Jessie drug Gentry into the bushes. While returning to Myhand's apartment, Jessie and Bishop discussed finding a shovel with which to bury Gentry. At Myhand's apartment, Jessie and Bishop washed off and changed into some clean clothes given to them by Myhand.

¶5. When Bishop, Jessie, Cory and Rakestraw finally left the apartment, Myhand and Dobbs called the police. Myhand took the officers to the site of the murder, and Gentry's body was recovered. Gentry's car was there, and a shovel was found nearby. Bishop and Jessie apparently fled the scene when the police car pulled up. They hid out in the woods until they were apprehended on December 13, 1998.

¶6. Steven Hayne, M. D., a forensic pathologist who conducted the autopsy on Gentry's body, testified that there were 23 injuries to the head, neck and hand which were produced either by a blunt object with enough force to break or tear the skin, or with a sharp object such as the edge of a claw hammer. These injuries did not include bruises or scrapes which could have been produced from being kicked. Injuries to the hands, forearms and fingers were consistent with defensive posturing by Gentry. According to Dr. Hayne, "Mr. Gentry died from cranial cerebral trauma, secondary to blunt force trauma to the head, and he also died from lacerations, tears of the voice box, with aspiration of blood."

## DISCUSSION

### Standard of Review

¶7. We review capital murder convictions where a sentence of death has been imposed with heightened scrutiny "under which all bona fide doubts are resolved in favor of the accused." *Flowers v. State*, 773 So. 2d 309, 317 (Miss. 2000) (citing *Porter v. State*, 732 So. 2d 899, 902 (Miss. 1999) (quoting *Williamson v. State*, 512 So. 2d 868, 872 (Miss. 1987)). "What may be harmless error in a case with less at stake [may become] reversible error when the penalty is death." *Id*.

### I. WHETHER THE TRIAL COURT ERRED FAILING TO FOLLOW RULE 9.08 OF THE UNIFORM CIRCUIT AND COUNTY COURT RULES.

¶8. UCCCR 9.08 requires that an omnibus hearing be held at least 3 days prior to the trial in order to ensure that the defendant is represented by counsel, to determine if any additional discovery is needed, to rule on any pending motions, to ascertain if constitutional or procedural issues exist, and to give the defendant an opportunity to change his or her plea.

¶9. Bishop contends that the circuit court erred by having the omnibus hearing one day before trial and that

the violation of the rule, aggregated with the circuit court's refusal to grant a continuance, constitutes reversible error. In support of his argument, Bishop cites *Inman v. State*, 515 So. 2d 1150, 1153 (Miss. 1987), where we found that the denial of Inman's motion for continuance, coupled with the trial court's failure to conduct a timely omnibus hearing (the hearing was held one day prior to trial), was reversible error.

¶10. However, critical to the decision to reverse in *Inman* was the failure of the State to provide witness statements until the omnibus hearing, the day before trial, even though this information had been requested two months before. *Id.* at 1153. Upon learning of the undisclosed witness statements, defense counsel moved for a continuance, which request was denied. In *Inman*, we do not know what impact a timely omnibus hearing may have had, but the production of undisclosed witness statements the day before trial compromised Inman's defense.

¶11. A violation of the three-day protective window provided by UCCCR 9.08 alone is not reversible error. Bishop has failed to demonstrate any actual prejudice that resulted from the failure of the circuit court to hold a timely omnibus hearing, and this claim is without merit.

### II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT DEFENDANT FUNDS FOR AN INDEPENDENT PSYCHOLOGICAL EXPERT TO HELP DEVELOP AND PRESENT MITIGATION EVIDENCE.

¶12. Bishop argues that the circuit court erred in not allowing funds to hire an independent psychological expert. He sought to employ Joe Ed Morris to develop psychological mitigation evidence from mental and emotional problems purportedly suffered by Bishop from childhood.[5] He informed the circuit court that the psychologist would investigate and testify for a fee of $2500.

¶13. The circuit court denied the motion because it had previously granted Bishop's motion for a competency evaluation and ordered that Bishop be evaluated by the Mississippi State Hospital at Whitfield. At the hearing on the motion for appointment of a psychological expert, the circuit court noted Bishop was found to be competent to stand trial and assist his attorney, and that it was further determined that he appreciated the difference between right and wrong at the time of the murder. The report from the State Hospital was not made an exhibit, and we can only assume no issue exists as to the findings on this issue that were made on the record by the circuit court. Finally, Bishop did not assert insanity as a defense.

¶14. A defendant is not entitled to a psychological expert where he has not raised insanity as a defense or where the State does not plan to submit psychological evidence against the defendant. *Ladner v. State*, 584 So. 2d 743, 757 (Miss. 1991); *Nixon v. State*, 533 So. 2d 1078, 1096 (Miss. 1987). As we have stated, "[w]here a defendant offers no more 'than undeveloped assertions that the requested assistance would be beneficial,' no trial court is under an obligation to provide him with fishing equipment." *Griffin v. State*, 557 So. 2d 542, 550 (Miss. 1990) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1, 105 S. Ct. 2633, 2637 n.1, 86 L. Ed. 2d 231 (1985)).

¶15. Bishop did not raise an insanity defense; he offered no facts which would show that there was a need to develop mitigating evidence based on psychological problems; and he underwent a thorough psychological evaluation performed at the State Hospital which produced no mitigating evidence.

¶16. We therefore find that Bishop was not entitled to a psychological expert for the purpose of developing

mitigating evidence.

### III. WHETHER THE CIRCUIT JUDGE ERRED IN FAILING TO RECUSE HIMSELF.

¶17. Bishop argues that Circuit Judge Barry Ford, who merely ruled on pre-trial motions and did not preside over the trial, should have recused himself because he represented Bishop on unrelated charges while serving as a public defender. Bishop alleges that during that representation, he and Judge Ford got into an altercation and that this prior relationship caused Judge Ford to be biased against Bishop.

¶18. Bishop has presented no evidence that Judge Ford was connected to any of the parties by affinity or consanguinity. *See Green v. State*, 631 So. 2d 167, 177 (Miss. 1994) (citing **Buchanan v. Buchanan**, 587 So. 2d 892, 895 (Miss. 1991)). Canon 3(C)(1) of the Code of Judicial Conduct requires disqualification of a judge when "his impartiality might reasonably be questioned, including but not limited to instances where . . . 'he has a personal bias or prejudice concerning a party. . . .'" A judge should recuse himself "if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Green*, 631 So. 2d at 177 (quoting **Jenkins v. State**, 570 So. 2d 1191, 1192 (Miss. 1990)). *See also* **Dowbak v. State**, 666 So. 2d 1377, 1389 (Miss. 1996). "Primarily, [a judge] is to judge his own qualifications and fairness, and unless a record reflects an abuse of his powers to the extent of showing probable injustice, the Court here will not reverse a case upon such grounds." **Garrett v. State**, 187 Miss. 441, 193 So. 452, 455 (1940) (cited with approval in **Coleman v. State**, 378 So. 2d 640, 644 (Miss. 1979)).

¶19. At the hearing on the motion to recuse, Bishop testified that the prior representation was in 1989 when he was charged with kidnaping, aggravated assault and grand larceny. The charges were ultimately referred to the youth court, and Bishop was sentenced to training school. Judge Ford stipulated to these facts. He then denied the motion for recusal on the basis that he had no recollection of representing Bishop, that the prior representation was remote in time, and that the motion for recusal was made the day before trial. A hearing on pretrial motions was then conducted by Judge Ford.

¶20. The next day, Circuit Judge Frank Russell opened court and proceeded with the trial to completion. Though absent from the record, it appears that Judge Ford, after hearing pre-trial motions, decided to request another judge to conduct the trial.

¶21. We find no abuse of discretion in Judge Ford's denial of the motion for recusal, particularly under the limited circumstances of his involvement.

### IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO AMEND CONSTRUCTIVELY THE INDICTMENT.

¶22. Bishop argues that the circuit court improperly allowed the State to amend constructively the indictment by including the phrase "without the authority of law" in Jury Instruction 8 (capital murder), when the phrase was not used in the indictment. Bishop further asserts that, although there was no contemporaneous objection, we should review this issue under the "plain error" rule.

¶23. The phrase "without authority of law," is an essential element of the capital murder statute. *See* Miss. Code Ann. § 90-3-19(2) (2000) ("The killing of a human being *without the authority of law* . . . .) (emphasis added). The indictment charging Bishop with capital murder failed to include that precise phrase, using instead the term "unlawfully":

JESSIE DEWAYNE JOHNSON AND DALE LEO BISHOP in said County and State on the 10th day of December, A.D., 1998, did willfully, *unlawfully* and feloniously, with or without any deliberate design to effect death, kill and murder Marcus James Gentry, a human being, while they, the said JESSIE DEWAYNE JOHNSON and/or DALE LEO BISHOP were engaged in the commission of the crime of kidnaping Marcus James Gentry, in violation of Section 97-3-19(2)(e), Mississippi Code 1972, Annotated, as amended; contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

(Emphasis added.)

¶24. Jury Instruction No. 8, submitted by the State and given by the circuit court, includes the statutory element "without authority of law," as follows:

The Court instructs the Jury that the killing of a human being *without the authority of law* by any means or any manner shall be capital murder when done with or without any design to effect death by any person engaged in the commission of the crime of kidnaping.

If you believe from all the evidence in this case, beyond a reasonable doubt, that the defendant, Dale Leo Bishop, did, acting with another, willfully, unlawfully, feloniously, with or without deliberate design, kill Marcus James Gentry, a human being, without the authority of law, when engaged in the commission of the crime of kidnaping, then, if you do so believe from all the evidence in the case beyond a reasonable doubt, the defendant is guilty of capital murder.

(Emphasis added.)

¶25. In ***Bell v. State,*** 725 So. 2d 836, 855-56 (Miss. 1998), citing to ***United States v. Adams***, 778 F.2d 1117, 1123 (5th Cir. 1985), we held that we will reverse any case upon which a defendant was convicted on an element of the offense not contained in the indictment:

A constructive amendment of an indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged." A constructive amendment of an indictment is reversible per se. Reversal is automatic because the defendant may have been convicted on a ground not charged in the indictment. ***Bell v. State***, 725 So. 2d 836, 855-56 (Miss. 1998) (quoting ***United States v. Adams***, 778 F.2d 1117, 1123 (5th Cir. 1985)).

¶26. However, we have held that "without the authority of law" and "unlawfully" are interchangeable phrases:

Replacing "without the authority of law" with "unlawfully" in the indictment did not fail to charge Turner with and essential element of the crime of depraved-heart murder as it is set out in Miss. Code Ann. § 97-3-19(1)(b). A common sense analysis of the definition of "unlawfully," similar to the analysis of "'wilfully or willfully' and 'intentionally'" found in ***Lester v. State***, 692 So. 2d 755, 789-90 (Miss 1997), *overruled on other grounds*, ***Weatherspoon v. State***, 732 So. 2d 158, 162 (Miss. 1999), shows that "without the authority of law" is synonymous with "unlawfully" and that they are interchangeable. Black's Law Dictionary defines ["]unlawful["] as "not authorized by law; illegal." *Black's Law Dictionary* 1536 (7th ed. 1999). Webster's defines ["]unlawful["] as "not lawful:

contrary to or prohibited by law: not authorized or justified by law: not permitted or warranted by law."*Webster's Third New International Dictionary* 2502 (1986). The word "unlawfully" and the phrase "without the authority of law" are interchangeable.

***Turner v. State***, 796 So. 2d 998, 1002 (Miss. 2001).

¶27. We find that Bishop was not convicted upon a factual basis which effectively modified an essential element of the offense.

¶28. This assignment of error is without merit.

### V. WHETHER THE TRIAL COURT ERRED IN GIVING THE STATE'S AIDING AND ABETTING INSTRUCTION.

¶29. Jury Instruction #10, on the issue of aiding and abetting, was offered by the State and given by the circuit court:

> The Court instructs the Jury that each person present at the time of, or consenting to and encouraging, aiding or assisting in any material manner in the commission of a crime, or knowingly and willfully doing any act which is an ingredient in the crime, is as much a principal as if he had with his own hands committed the whole offense.

> Therefore, if you believe from the evidence in this case beyond a reasonable doubt that the crime charged in this case did take place and that Dale Leo Bishop was present at the time and place where the crime was committed, and that he knowingly and willfully encouraged, aided, or assisted in any material manner in the commission of that crime or knowingly and willfully did any act which is an ingredient in that crime, then he is as much a principal as if he had with his own hands committed the whole offense.

¶30. Bishop argues that the instruction is confusing and allowed the jury to convict him if it found that he committed only one element of the crime. He further argues that it does not distinguish between the crimes of murder or capital murder. Bishop did not specifically object to the legal correctness of the instruction at trial, but instead stated, "We think it's confusing." Notwithstanding the procedural bar, we will address Bishop's argument as assigned. *See **Doss v. State***, 709 So. 2d 369, 378 (Miss. 1996) ("[A]n objection on one or more specific grounds constitutes a waiver of all other grounds.") (quoting ***Conner v. State***, 632 So. 2d 1239, 1255 (Miss. 1993).

¶31. The aiding and abetting instruction used by the circuit court is similar to the instruction found to be erroneous, though harmless, in ***Hornburger v. State***, 650 So. 2d 510 (Miss. 1995). Hornburger argued that the aiding and abetting instruction told the jury that if they found he had committed *any act* which was an element of burglary or led to its commission, they could find him guilty as charged, without first finding that he was present at, consented to and encouraged the commission of the crime. 650 So. 2d at 515. We found, however, that the error was harmless at most when the aiding and abetting instruction was read with the other instructions.

¶32. We further discussed ***Hornburger***'s erroneous instruction in ***Liggins v. State***, 726 So. 2d 180, 184 (Miss. 1998):

Both instructions are objectionable in their effect. In *Hornburger*, it was pointed out that "[the aiding and abetting instruction] basically says if you find [the defendant] did any act which is an element of the crime of burglary, you shall find [the defendant] guilty as charged." [Citation omitted.] As Liggins objected at trial, [the aiding and abetting instruction] "lessens the burden of the State to prove every element of a crime by suggesting that if they can show any act which is an element of the crime, then the instruction directs them to find the defendant guilty." Liggins basically argued that the State must simply show an act which is an element of the crime, rather than prove every element, to require a jury to find a defendant guilty.

We found that the instruction in *Hornburger* was harmless error because of its sufficient sister instruction and because the term "should" was used as opposed to the "shall" utilized in the instant case. Further, *Hornburger*'s instruction required a greater burden on the state to prove the necessary elements, whereas the instant case's instruction, lessened the state's burden. *Hornburger* is not this case. It is reversible error in this case.

*Liggins*, 726 So. 2d at 184-85.

¶33. In *Milano v. State*, 790 So. 2d 179 (Miss. 2001), we held harmless an erroneous aiding and abetting instruction when accompanied by three instructions correctly placing the burden on the State:

Contrary to these instructions, there were three instructions preceding these two that specifically addressed the burden of the State. For example, S-4, S-6-A, and S-7 each provide that "[i]f the State has failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find the Defendant not guilty of [the crime]." Each jury instruction that specifically addressed the crimes charged also specifically stated that the State must prove every element of the crime beyond a reasonable doubt or the defendant is to be found not guilty.

However, in this case, there were three preceding instructions that properly placed the burden on the State to prove every element of the crime. The jury was fully instructed that if all the elements were not proven beyond a reasonable doubt, Milano was to be found not guilty. Accordingly, the jury could not have been confused when all instructions were considered and read together. We thus find the error harmless.

790 So. 2d at 184-185.

¶34. Jury Instruction C-5,[6] on the burden of proof, placed the burden on the State "of proving beyond a reasonable doubt every element of the crime with which the defendant was charged . . . ." Failing to prove any material element of the crime charged required a finding of not guilty. Jury Instruction 8,[7] on capital punishment, properly instructed the jury of the elements of capital murder while engaged in the crime of kidnaping. Jury Instruction 11,[8] on lesser offenses, required the jury to find the defendant "not guilty if the State failed to one of the essential elements of capital murder. Jury Instruction 12[9] properly set out for consideration the lesser crime of murder.

¶35. Jury Instruction 10, on aiding and abetting, when read with the other instructions which required the jury to find the State had to prove all elements of the offense before Bishop could be found guilty, was harmless error. In *Milano*, we "prospectively adopted the pattern instruction of the Fifth Circuit on aiding and abetting." 790 So. 2d at 185. A defendant must voluntarily have participated in the murder, and the

jury must find beyond a reasonable doubt that every element of the crime was committed to find the defendant guilty.

¶36. This issue is without merit.

## VI. WHETHER THE CIRCUIT COURT ERRED IN ALLOWING WAIVER OF SENTENCING BY JURY.

¶37. Bishop argues that the circuit court erred in allowing him to waive sentencing by a jury, because Miss. Code Ann. § 99-19-101 does not make allowance for waiver. Miss. Code Ann. § 99-19-101(1) provides detailed instructions for trial courts to follow during the sentencing phase of the trial:

> (1) Upon conviction or adjudication of guilt of a defendant of capital murder or other capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life imprisonment. The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable. If, through impossibility or inability, the trial jury is unable to reconvene for a hearing on the issue of penalty, having determined the guilt of the accused, the trial judge may summon a jury to determine the issue of the imposition of the penalty. *If the trial jury has been waived, or if the defendant pleaded guilty, the sentencing proceeding shall be conducted before a jury impaneled for that purpose or may be conducted before the trial judge sitting without a jury if both the State of Mississippi and the defendant agree thereto in writing.* In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitutions of the United States or of the State of Mississippi. The state and the defendant and/or his counsel shall be permitted to present arguments for or against the sentence of death

(Emphasis added.)

¶38. In *Spaziano v. Florida*, 468 U.S. 447, 465, 104 S. Ct. 3154, 82 L. Ed. 2d 340 (1984), the United States Supreme Court held that a defendant's constitutional rights were not violated when a trial judge was allowed to impose the death penalty. Upon agreement between the defendant and the prosecution, a criminal defendant may waive his right to jury trial as to guilt. *Robinson v. State*, 345 So. 2d 1044, 1045 (Miss. 1997). Criminal defendants frequently waive the right to jury trial and enter pleas of guilty.

¶39. By pleading guilty a defendant waives his constitutional rights against self-incrimination, to confront witnesses, and the requirement to have each element of the offense proved beyond a reasonable doubt. *See Chunn v. State*, 669 So. 2d 29, 32 (Miss. 1996); *Jefferson v. State*, 556 So. 2d 1016, 1019 (Miss. 1989). A defendant is allowed to waive many important rights. *See Michigan v. Jackson*, 475 U.S. 625, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986) (waiver of Sixth Amendment right to counsel); *North Carolina v. Butler*, 441 U.S. 369, 374-75, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979) (waiver of Fifth Amendment or *Miranda* rights); *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) (waiver of Fourth Amendment rights by persons not in custody); *Illinois v. Maxwell*, 670 N.E.2d 679, 686-87 (Ill. 1996) (waiver of sentencing jury in death penalty did not violate due process where trial court conducted extensive inquiry and determined that defendant's waiver was knowing, intelligent, and voluntary).

¶40. The statute in question does not contain a provision for the waiver of a jury during the sentencing phase of a trial. However, case law and common practice show that the right to a jury during the sentencing phase may be waived. Bishop requested that his right to jury be waived. The sentencing judge did not force Bishop to do so. The judge discussed the matter in detail with Bishop. He made sure that Bishop's choice to waive his right to jury was voluntary and that he was not under the influence of any drugs. He explained to Bishop his right to offer mitigating evidence and what rights would be given up if the motion for waiver was granted. Bishop explicitly waived his right to a jury during the sentencing phase and cannot now complain his decision was error.

¶41. The record reflects that the following transpired after the jury rendered the guilty verdict and was returned to the jury room:

> BY THE COURT: I have been advised by counsel that in the event Mr. Bishop is convicted of capital murder that Mr. Bishop desires to waive jury in the sentencing phase. This can only be done provided that the State also waives jury in the sentencing phase. I'm going to take a recess and I want Mr. Daniels and Mr. Weddle to confer with counsel - confer with their client and make certain that is the true knowing voluntary free decision of Mr. Bishop and to report back to the Court along those lines. We'll be in recess until you report back to the Court. You may be excused.

> [Recess.]

> BY THE COURT: All right. The Court has been presented with two written documents that purport to have been executed by Mr. Dale Leo Bishop, one of them, and the other by John R. Young, district attorney. These documents indicate that Mr. Bishop waives trial by jury with respect to the sentencing phase and also the other one indicates that the State of Mississippi waives a jury trial on the issue of sentencing in this case.

> Before we proceed further, Mr. Bishop, I want to ask you a few questions concerning that. Would you mind standing and be[ing] sworn again?

> Do you solemnly swear or affirm the statements you're about to make are the truth, the whole truth, and nothing but the truth, so help you God?

> BY MR. BISHOP: Yes, sir.

> BY THE COURT: Mr. Bishop, do you - let me ask you this first. Are you presently under the influence of any intoxicating liquor, drug or other substance?

> BY MR. BISHOP: No, sir.

> BY THE COURT: How old are you?

> BY MR. BISHOP: 25 - 26. 26.

> BY THE COURT: Do you suffer from any known mental illness, sickness, disease or disorder?

> BY MR. BISHOP: Nothing substantial.

> BY THE COURT: Well, tell me about anything minor.

BY MR. BISHOP: I don't know - no. The answer is no.

BY THE COURT: All right. How far did you get in school?

BY MR. BISHOP: 7th, 8th grade.

BY THE COURT: Can you read and write?

BY MR. BISHOP: Yes, sir.

BY THE COURT: Do you understand that you do have the right, at this phase of the proceeding, the second phase commonly referred to as the sentencing phase, to have mitigating circumstances presented on your behalf, unlimited with respect to the number or really what they relate to, just about anything can be offered in way of mitigation by you and you can make that, present that proof or that testimony in the presence of the jury? Do you understand that?

BY MR. BISHOP: Yes, sir.

BY THE COURT: And that jury has the right to deliberate, after hearing those mitigating circumstances and the aggravating circumstances, if any, presented by the State, and that jury would have the final say-so in determining whether or not to sentence you to death or sentencing you to life without the possibility of parole. Do you understand that?

BY MR. BISHOP: Yes, sir.

BY THE COURT: And further, do you understand that if the jury could not agree, then the Court would only have one option and that would be to sentence you to life without parole? Do you understand that?

BY MR. BISHOP: Yes, sir.

BY THE COURT: Do you also understand that the jury could sentence you to life without parole, even though the aggravating circumstances, even though they found that the aggravating circumstances outweighed the mitigating circumstances? Do you understand that?

BY MR. BISHOP: Yeah.

BY THE COURT: Are you, as you've indicated in this written document, are you knowingly, freely, voluntarily, and understandingly waiving your right to a jury trial at the sentencing phase of the proceeding?

BY MR. BISHOP: Yes, sir.

BY THE COURT: Very well. Mr. Daniels, I want you, if you desire, to ask Mr. Bishop any questions that you may think necessary.

BY MR. DANIELS: All right, your Honor.

BY THE COURT: From right there will be fine.

BY MR. DANIELS: Mr. Bishop, have you been advised against doing this by Mr. Weddle and I?

BY MR. BISHOP: Yes, sir.

BY MR. DANIELS: Is this something that you have thought about thoroughly before today?

BY MR. BISHOP: Yes, sir.

BY MR. DANIELS: And did you advise me of this earlier on in my representation of you?

BY MR. BISHOP: Yes, sir.

BY MR. DANIELS: Do you understand that you might be giving up some issues that may come up on the appeal of this case before the Mississippi Supreme Court by waiving this sentencing hearing before a jury?

BY MR. BISHOP: Yes, sir.

BY MR. DANIELS: Is this your firm desire to do this?

BY MR. BISHOP: Yes.

BY MR. DANIELS: I have nothing further, your Honor. Mr. Weddle may have something.

BY THE COURT: Mr. Weddle, do you have anything you want to add?

BY MR. WEDDLE: Mr. Bishop, if I asked you the same questions that Mr. Daniels asked you, would your answers still be the same with respect to my questions?

BY MR. BISHOP: Yes, sir.

BY MR. WEDDLE: Are you satisfied that we have advised you of all rights that the Court has just advised you of?

BY MR. BISHOP: Yes, sir.

BY MR. WEDDLE: And, again, you waive those rights freely and voluntarily?

BY MR. BISHOP: Yes, sir.

BY MR. WEDDLE: Nothing further, your Honor.

BY THE COURT: Mr. Bishop, are you satisfied with the legal services and advice of your attorneys?

BY MR. BISHOP: Yes, sir.

BY THE COURT: Do you feel that your attorneys have properly advised you before making this decision?

BY MR. BISHOP: Yes, sir.

BY THE COURT: And is it your own personal desire to waive jury for the sentencing phase?

BY MR. BISHOP: Yes, sir.

BY THE COURT: Very well. You may be seated.

¶42. This issue is without merit.

### VII. WHETHER THE IMPOSITION OF THE DEATH PENALTY WAS DISPROPORTIONATE.

¶43. Bishop argues that the death penalty was disproportionately imposed upon him and that the State failed to prove the required factors for the imposition of the death penalty beyond a reasonable doubt.

#### A. Whether the evidence was insufficient to support a finding that Bishop contemplated lethal force would be employed.

¶44. Bishop argues that the evidence was insufficient to show that he contemplated lethal force, and that the evidence showed that he intended only to give Gentry "a good whooping."

¶45. When the sufficiency of the evidence is challenged, we must view the evidence and all reasonable inferences which may be drawn therefrom in the light most consistent with the verdict. We have no authority to disturb the verdict short of a conclusion that no rational trier of fact could have found the fact at issue beyond a reasonable doubt. *White v. State*, 532 So. 2d 1207, 1220 (Miss. 1988).

¶46. Bishop points to the cases of *Reddix v. State*, 547 So. 2d 792 (Miss. 1989), and *Bullock v. State*, 525 So. 2d 764 (Miss. 1987), in which the imposition of the death penalty was reversed where the defendants did not actually kill the victim, but either watched the murder or committed part of the underlying felony. Bishop, on the other hand, took an active part in Gentry's murder: he provided the weapon used on the victim, kicked the victim, chased the victim down and held him while the lethal blows were being inflicted. It is reasonable to conclude that if one intends to beat someone in the head with an unusually large hammer, that person intends to use lethal force. Furthermore, the length of time between the first blow and the fatal blow indicates that Bishop not only knew that lethal force would be used, but also encouraged the use of lethal force. He also discussed burying the victim after the crime was completed.

¶47. This issue is without merit.

#### B. Whether Death is a Disproportionate Penalty in This Case.

¶48. Under Miss. Code Ann. § 99-19-105(3)(c), we must consider "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Under Miss. Code Ann. § 99-19-101(7) (Supp. 2001), for a defendant to be given the death penalty, certain factors must be met:

(7) In order to return and impose a sentence of death the jury must make a written finding of one or more of the following:

(a) The defendant actually killed;

(b) The defendant attempted to kill;

(c) The defendant intended that a killing take place;

(d) The defendant contemplated that lethal force would be employed.

¶49. The United States Supreme Court, in ***Enmund v. Florida***, 458 U.S. 782, 788-801, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 (1982), required that the imposition of the death penalty be consistent with the Eighth and Fourteenth Amendments to the United States Constitution. The death penalty cannot be given to an aider and abettor who has not killed, attempted to kill, or contemplated that life would be taken.

¶50. The record shows that, after Gentry had been hit in the head with the hammer for the first time, Bishop chased after him and brought him back. When Bishop saw Gentry hit with the hammer he knew deadly force was being used. When he ran Gentry down and held Gentry as he was being struck by Jessie, he became more of a principal in the crime. A jury could have easily found that Bishop killed, intended to kill, or at least contemplated that deadly force would be used. This case is not like a robbery where someone is killed on impulse. Bishop took an active role in the killing.

¶51. All of these facts show that Bishop's involvement was sufficient to justify the death sentence, even, assuming *arguendo*, that the actual killer did not receive the death sentence.[10] *See **Smith v. State***, 724 So. 2d 280, 304 (Miss. 1998) (citing ***Ballenger v. State***, 667 So. 2d 1242, 1268 (Miss. 1995); ***Stringer v. State***, 454 So. 2d 468, 479 (Miss. 1984); ***Leatherwood v. State***, 435 So. 2d 645, 656 (Miss. 1983)).

¶52. We affirmatively find that Bishop contemplated that lethal force would be used and that the sentence of death is neither excessive nor disproportionate to the sentences imposed in similar cases. *See* attached appendix of death penalty cases decided by this Court.

## POSTSCRIPT

¶53. Bishop did not offer any mitigating evidence prior to being sentenced by the circuit judge. Following the announcement of the imposition of the death sentence, and upon being given permission by the circuit court to say anything further, Bishop made a statement to Gentry's family, a portion of which is as follows: "For what I did, I deserve to die. I ain't gonna ask this court to spare my life and let me grow old. I ain't gonna do it."

## CONCLUSION

¶54. For the foregoing reasons, we affirm the jury verdict and the imposition of the death penalty by the Circuit Court of Lee County, Mississippi.

¶55. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH BY LETHAL INJECTION, AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

## APPENDIX

## DEATH CASES AFFIRMED BY THIS COURT

*Stevens v. State*, So. 2d (Miss. 2001).

*Mitchell v. State*, 792 So. 2d 192 (Miss. 2001).

*Puckett v. State,* 788 So. 2d 752 (Miss. 2001).*

*Goodin v. State*, 787 So. 2d 639 (Miss. 2001).

*Jordan v. State,* 786 So. 2d 987 (Miss. 2001).

*Manning v. State,* 765 So. 2d 516 (Miss. 2000).*

*Eskridge v. State,* 765 So. 2d 508 (Miss. 2000).

*McGilberry v. State,* 741 So. 2d 894 (Miss. 1999).

*Puckett v. State,* 737 So. 2d 322 (Miss. 1999).**

*Manning v. State,* 735 So. 2d 323 (Miss. 1999).**

*Hughes v. State,* 735 So. 2d 238 (Miss. 1999).

*Turner v. State,* 732 So. 2d 937 (Miss. 1999).

*Smith v. State,* 729 So. 2d 1191 (Miss. 1998).

*Burns v. State,* 729 So. 2d 203 (Miss. 1998).

*Jordan v. State,* 728 So. 2d 1088 (Miss. 1998).

*Gray v. State,* 728 So. 2d 36 (Miss. 1998).

*Manning v. State,* 726 So. 2d 1152 (Miss. 1998).

* Following remand.

** Following remand for *Batson* hearing.

## DEATH CASES AFFIRMED BY THIS COURT

(continued)

*Woodward v. State,* 726 So. 2d 524 (Miss. 1997).

*Bell v. State,* 725 So. 2d 836 (Miss. 1998).

*Evans v. State,* 725 So. 2d 613 (Miss. 1997).

*Brewer v. State,* 725 So. 2d 106 (Miss. 1998).

*Crawford v. State,* 716 So. 2d 1028 (Miss. 1998).

*Doss v. State,* 709 So. 2d 369 (Miss. 1998).

*Underwood v. State*, 708 So. 2d 18 (Miss. 1998).

*Holland v. State,* 705 So. 2d 307 (Miss. 1997).

*Wells v. State,* 698 So. 2d 497 (Miss. 1997).

*Wilcher v. State,* 697 So. 2d 1087 (Miss. 1997).

*Wiley v. State,* 691 So. 2d 959 (Miss. 1997).

*Brown v. State*, 690 So. 2d 276 (Miss. 1996).

*Simon v. State*, 688 So. 2d 791 (Miss.1997).

*Jackson v. State*, 684 So. 2d 1213 (Miss. 1996).

*Williams v. State,* 684 So. 2d 1179 (Miss. 1996).

*Davis v. State,* 684 So. 2d 643 (Miss. 1996).

*Taylor v. State*, 682 So. 2d. 359 (Miss. 1996).

*Brown v. State*, 682 So. 2d 340 (Miss. 1996).

## DEATH CASES AFFIRMED BY THIS COURT

(continued)

*Blue v. State*, 674 So. 2d 1184 (Miss. 1996).

*Holly v. State*, 671 So. 2d 32 (Miss. 1996).

*Walker v. State*, 671 So. 2d 581 (Miss. 1995).

*Russell v. State*, 670 So. 2d 816 (Miss. 1995).

*Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995).

*Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

*Carr v. State*, 655 So. 2d 824 (Miss. 1995).

*Mack v. State*, 650 So. 2d 1289 (Miss. 1994).

*Chase v. State*, 645 So. 2d 829 (Miss. 1994).

*Foster v. State*, 639 So. 2d 1263 (Miss. 1994).

*Conner v. State*, 632 So. 2d 1239 (Miss. 1993).

*Hansen v. State*, 592 So. 2d 114 (Miss. 1991).

*Shell v. State*, 554 So. 2d 887 (Miss. 1989), *Shell v. Mississippi,* 498 U.S. 1 (1990) reversing in part, and remanding, *Shell v. State*, 595 So. 2d 1323 (Miss. 1992), remanding for new sentencing hearing.*

*Davis v. State*, 551 So. 2d 165 (Miss. 1989).

*Minnick v. State*, 551 So. 2d 77 (Miss. 1989).

*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989), *Pinkney v. Mississippi*, 494 U.S. 1075 (1990) vacating and remanding, *Pinkney v. State*, 602 So. 2d 1177 (Miss. 1992), remanding for new sentencing hearing.*

* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

## DEATH CASES AFFIRMED BY THIS COURT

(continued)

*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990), vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.*

*Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

*Nixon v. State*, 533 So. 2d 1078 (Miss. 1987).

*Cole v. State*, 525 So. 2d 365 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1317 (Miss. 1987).

*Faraga v. State*, 514 So. 2d 295 (Miss. 1987).

*Jones v. State*, 517 So. 2d 1295 (Miss. 1987)*, Jones v. Mississippi*, 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.*

*Wiley v. State*, 484 So. 2d 339 (Miss. 1986).

*Johnson v. State*, 477 So. 2d 196 (Miss. 1985).

*Gray v. State*, 472 So. 2d 409 (Miss. 1985).

*Cabello v. State*, 471 So. 2d 332 (Miss. 1985).

*Jordan v. State*, 464 So. 2d 475 (Miss. 1985).

*Wilcher v. State*, 455 So. 2d 727 (Miss. 1984).

*Billiot v. State*, 454 So. 2d 445 (Miss. 1984).

*Stringer v. State*, 454 So. 2d 468 (Miss. 1984).

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

### DEATH CASES AFFIRMED BY THIS COURT

(continued)

*Dufour v. State*, 453 So. 2d 337 (Miss. 1984).

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss. 1982).

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

### DEATH CASES AFFIRMED BY THIS COURT

(continued)

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978).

*Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 61 (Miss. 1978).

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

## DEATH CASES REVERSED AS TO

## GUILT AND SENTENCE PHASES

*Randall v. State,* ___ So. 2d ___, 2001 WL 1137623 (Miss. 2001).

*Flowers v. State,* 773 So. 2d 309 (Miss. 2000).

*Edwards v. State,* 737 So. 2d 275 (Miss. 1999).

*Smith v. State,* 733 So. 2d 793 (Miss. 1999).

*Porter v. State,* 732 So. 2d 899 (Miss. 1999).

*Kolberg v. State,* 704 So. 2d 1307 (Miss. 1997).

*Snelson v. State,* 704 So. 2d 452 (Miss. 1997).

*Fusilier v. State,* 702 So. 2d 388 (Miss. 1997).

*Howard v. State,* 701 So. 2d 274 (Miss. 1997).

## DEATH CASES REVERSED AS TO

## GUILT AND SENTENCE PHASES

(continued)

*Lester v. State,* 692 So. 2d 755 (Miss. 1997).

*Hunter v. State*, 684 So. 2d 625 (Miss. 1996).

*Lanier v. State*, 684 So. 2d 93 (Miss. 1996).

*Giles v. State,* 650 So. 2d 846 (Miss. 1995).

*Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994).

*Harrison v. State*, 635 So. 2d 894 (Miss. 1994).

*Butler v. State*, 608 So. 2d 314 (Miss. 1992).

*Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992).

*Abram v. State*, 606 So. 2d 1015 (Miss. 1992).

*Balfour v. State*, 598 So. 2d 731 (Miss. 1992).

*Griffin v. State*, 557 So. 2d 542 (Miss. 1990).

*Bevill v. State*, 556 So. 2d 699 (Miss. 1990).

*West v. State*, 553 So. 2d 8 (Miss. 1989).

*Leatherwood v. State*, 548 So. 2d 389 (Miss. 1989).

*Mease v. State*, 539 So. 2d 1324 (Miss. 1989).

*Houston v. State*, 531 So. 2d 598 (Miss. 1988).

*West v. State*, 519 So. 2d 418 (Miss. 1988).

*Davis v. State*, 512 So. 2d 129l (Miss. 1987).

*Williamson v. State*, 512 So. 2d 868 (Miss. 1987).

## DEATH CASES REVERSED AS TO

## <u>GUILT AND SENTENCE PHASES</u>

(continued)

*Foster v. State*, 508 So. 2d 1111 (Miss. 1987).

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).

**DEATH CASES REVERSED AS TO**

**PUNISHMENT AND REMANDED FOR**

<u>**RESENTENCING TO LIFE IMPRISONMENT**</u>

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State*, 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

**DEATH CASES REVERSED AS TO**

**PUNISHMENT AND REMANDED FOR**

<u>**RESENTENCING TO LIFE IMPRISONMENT**</u>

(continued)

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

**DEATH CASES REVERSED**

**AS TO PUNISHMENT**

**AND REMANDED FOR A NEW TRIAL**

<u>**ON SENTENCING PHASE ONLY**</u>

*King v. State,* 784 So.2d 884 (Miss. 2001).

*Walker v. State,* 740 So.2d 873 (Miss. 1999).

*Watts v. State,* 733 So.2d 214 (Miss. 1999).

*West v. State,* 725 So. 2d 872 (Miss. 1998).

*Smith v. State*, 724 So. 2d 280 (Miss. 1998).

*Berry v. State,* 703 So. 2d 269 (Miss. 1997).

*Booker v. State*, 699 So. 2d 132 (Miss. 1997).

*Taylor v. State*, 672 So. 2d 1246 (Miss. 1996).

***Shell v. State***, 554 So. 2d 887 (Miss. 1989), ***Shell v. Mississippi***, 498 U.S. 1 (1990) reversing, in part, and remanding, ***Shell v. State*** 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.*

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

## DEATH CASES REVERSED

## AS TO PUNISHMENT

## AND REMANDED FOR A NEW TRIAL

## <u>ON SENTENCING PHASE ONLY</u>

(continued)

***Pinkney v. State***, 538 So. 2d 329 (Miss. 1989), ***Pinkney v. Mississippi,*** 494 U.S. 1075 (1990) vacating and remanding, ***Pinkney v. State,*** 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.*

***Clemons v. State***, 535 So. 2d 1354 (Miss. 1988), ***Clemons v. Mississippi***, 494 U.S. 738 (1990) vacating and remanding, ***Clemons v. State***, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.*

***Jones v. State***, 517 So. 2d 1295 (Miss. 1987), ***Jones v. Mississippi,*** 487 U.S. 1230 (1988) vacating and remanding, ***Jones v. State***, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.*

***Russell v. State***, 607 So. 2d 1107 (Miss. 1992).

***Holland v. State***, 587 So. 2d 848 (Miss. 1991).

***Willie v. State***, 585 So. 2d 660 (Miss. 1991).

***Ladner v. State***, 584 So. 2d 743 (Miss. 1991).

***Mackbee v. State***, 575 So. 2d 16 (Miss. 1990).

***Berry v. State***, 575 So. 2d 1 (Miss. 1990).

***Turner v. State***, 573 So. 2d 657 (Miss. 1990).

***State v. Tokman***, 564 So. 2d 1339 (Miss. 1990).

***Johnson v. State***, 547 So. 2d 59 (Miss. 1989).

***Williams v. State***, 544 So. 2d 782 (Miss. 1989); *sentence aff'd* 684 So. 2d 1179 (1996).

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

# DEATH CASES REVERSED

# AS TO PUNISHMENT

# AND REMANDED FOR A NEW TRIAL

# ON SENTENCING PHASE ONLY

(continued)

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984); resentencing affirmed, *Wiley v. State*, 484 So. 2d 339 (Miss. 1986), *cert. denied* *Wiley v. Mississippi*, 479 U.S. 1036 (1988); resentencing ordered, *Wiley v. State*, 635 So. 2d 802 (Miss. 1993) following writ of habeas corpus issued pursuant to *Wiley v. Puckett*, 969 F.2d 86, 105-106 (5th Cir. 1992); resentencing affirmed, *Wiley v. State*, 95-DP-00149, February 13, 1997 (rehearing pending).

*Williams v. State*, 445 So. 2d 798 (Miss. 1984).

1. Bishop did not testify at trial. He did give a detailed statement to the police on December 13, 1998, which statement was admitted into evidence.

2. In his statement given to the police, Bishop said Jessie was upset at Gentry for ratting on his brothers. As a result of the "ratting," Bishop believed that Jessie's little brothers were charged with some serious crimes. "Mark [Gentry] had instigated his brothers' getting about 9 or 10 counts of grand larceny and burglary."

3. In his statement given to the police, Bishop, whose life-long vocation was being a carpenter, admitted the hammer belonged to him and went into some detail describing its characteristics. He stated that carpenter's hammers normally used in Mississippi weighed 20 to 22 ounces. He stated, "[The hammer owned by Bishop and used to hit Gentry] is a 28 ounce Vaughn [??? not sure if Vaughn is correct] [sic] California framing straight claw." He indicated that his hammer was not available for purchase in Mississippi. When asked by the police about how he came about bringing a hammer with him when he went riding with Gentry, he admitted using a false pretense:

> BY BISHOP: Well, when the trip originally began, the excuse was that I was going to go work on my truck and I use the hammer to work on my truck.

BY THE POLICE: Is that true?

BY BISHOP: That's just how we got the usage of the car to begin with.

4. There is some discrepancy in the chain of events. In his statement, Bishop indicated that Jessie initially "decked Gentry with his hands." Then Bishop grabbed Gentry and Jessie hit him "probably just twice" with the hammer.

5. The only support given for the motion for appointment of an expert psychologist was the allegation that Bishop had suffered from psychological problems dating back to childhood. Later, Bishop's attorney made a motion for funds so that he could travel to Humble, Texas, Bishop's childhood home. Bishop's attorney explained that Bishop was treated by a clinic in Humble when he was about six years old. He stated that they needed Bishop's school records and that Bishop's aunt, who had known Bishop all of his life, would need to be interviewed. The circuit court was not aware of these allegations at the time it ruled upon the motion for appointment, and denied the motion as it was first raised the day before trial.

6. Instruction C-5 provided in pertinent part:

The burden of proving beyond a reasonable doubt every material element of the crime with which the Defendant is charged is upon the State of Mississippi. If the State has failed to prove any material element of the crime charged beyond a reasonable doubt, you are to find the Defendant not guilty.

7. Instruction 8 provided:

The Court instructs the Jury that the killing of a human being without the authority of law by any means or any manner shall be capital murder when done with or without any design to effect death by any person engaged in the commission of the crime of kidnapping.

If you believe from all the evidence in this case, beyond a reasonable doubt, that the defendant, DALE LEO BISHOP, did, acting with another, wilfully, unlawfully, feloniously, with or without deliberate design, kill Marcus James Gentry, a human being, without authority of law, when engaged in the commission of the crime of Kidnapping, then, if you so believe from all the evidence in this case beyond a reasonable doubt, the defendant is guilty of capital murder.

8. Instruction 11 provided in pertinent part:

If you find that the State has failed to prove one of the essential elements of the crime of capital murder, you must find the defendant not guilty of capital murder, and you should proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all the elements of the lesser crime of murder.

9. Instruction 12 provided:

If you fail to find the defendant guilty of the crime of Capital Murder, you should continue your deliberations to consider the elements of the crime of Murder. If you find from the evidence in this case beyond a reasonable doubt that Dale Leo Bishop, while acting alone or in concert with another, did wilfully, unlawfully and feloniously, without authority of law, kill and murder Marcus James Gentry, with malice aforethought or deliberate design, then you shall find the defendant, DALE LEO

BISHOP, guilty of Murder.

If the State has failed to prove one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty of Murder.

10. On September 22, 2000, after a jury trial, Jessie Wayne Johnson, Bishop's co-indictee, was sentenced to life imprisonment without parole. An appeal from this verdict and sentence is now pending before the Court of Appeals. *See **Jessie Dewayne Johnson v. State,*** No. 2000-KA-01954-COA.