# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 11, 2008

Charles R. Fulbruge III
Clerk

No. 07-70035

DALE LEO BISHOP

Petitioner-Appellant

V.

CHRISTOPHER B EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT
OF CORRECTIONS

Respondent-Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:04-CV-319

Before KING, DAVIS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant Dale Leo Bishop requests a certificate of appealability

("COA").  His request is denied.

## I. FACTS AND PROCEEDINGS

Bishop, a prisoner sentenced to death and currently in the custody of the

Mississippi Department of Corrections, filed this application for a COA after his

---

[*] Pursuant to 5TH CIR. R. 47.5, this Court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

petition for a writ of habeas corpus and his request for a COA was denied by the district court.

## A. Factual History[1]

On December 10, 1998, Bishop consumed alcohol at the apartment of Ricky Myhand and Rachel Dobbs in Saltillo, Mississippi. Also present in the home were Marcus James Gentry, Charlie Rakestraw, Jessie Johnson, and his brother, Cory Johnson. After deciding to purchase more alcohol, Jessie Johnson, Bishop, Myhand, and Gentry left the apartment in Gentry's vehicle. Bishop, who was a carpenter by trade, brought with him a 28-ounce Vaughn California framing straight claw hammer, which he claimed he needed in order to work on his truck.[2] Upon reaching the store, they found it closed, and Gentry began driving back to Myhand's apartment. Jessie Johnson, who was seated in the passenger's seat, accused Gentry of "ratting" on his brother, Cory, regarding incidents leading to grand larceny and burglary charges. Although Gentry denied the accusations, Jessie struck Gentry between the eyes with Bishop's hammer.[3] After the car coasted to a stop, Bishop, who was seated behind Gentry, grabbed Gentry in a headlock and punched him while Jessie hit Gentry again with the hammer. Gentry was moved to the passenger's seat and Jessie took control of the car, moving it down a dirt road. After Jessie stopped the car, Gentry ran from the vehicle. Jessie told Bishop to get Gentry and bring him back. Bishop complied, returning with Gentry approximately five minutes later, and the men forced Gentry to his knees in front of the car.

---

[1] The background facts are taken from the statement of facts in the Supreme Court of Mississippi's opinion in Bishop v. State, 812 So. 2d 934, 937–38 (Miss. 2002) (en banc), and based upon a record review of the trial transcript.

[2] He later admitted to police that the excuse was a pretense to bring the hammer into the car.

[3] In its opinion, the Supreme Court of Mississippi noted that a discrepancy existed as to whether Jessie initially hit Gentry with his hands or with the hammer. Id. at 938 n.4.

Bishop and Jessie kicked Gentry numerous times and Jessie struck Gentry several times with the hammer. At some point during the beating, Bishop asked Myhand to hold Gentry while Bishop retrieved more alcohol for himself and Jessie. When the beating finally ended, Bishop dislodged his hammer from Gentry's throat, and Jessie and he drug Gentry's body into nearby bushes. Jessie, Bishop, and Myhand then left the scene to return to Myhand's apartment. On the way to the apartment, Jessie and Bishop talked about finding a shovel and burying Gentry's body.

Arriving at Myhand's apartment, Jessie and Bishop washed off and were given clean clothes by Myhand. When all of the visitors had left the apartment, Myhand and Dobbs reported the crime to police. Myhand took officers to the murder site, where they recovered Gentry's body. Gentry's car was there and a shovel was found nearby. It is assumed that Jessie and Bishop fled the scene and hid in the woods when the police arrived. The pair were finally apprehended on December 13, 1998, and were indicted for capital murder during the course of kidnapping. The two were tried separately.

A forensic pathologist performed Gentry's autopsy and testified at Bishop's trial that there were twenty-three injuries to Gentry's head, neck, and hands, and that these injuries were produced either by a blunt object with enough force to break the skin or by a sharp-edged object such as a claw hammer. He also testified that Gentry's injuries to his hands, forearms, and fingers were consistent with defensive wounds and that Gentry died of "cranial cerebral trauma, secondary to blunt force trauma to the head," and also from "lacerations, tears of the voice box, with aspirations of blood." Bishop did not testify at trial, but the trial judge admitted into evidence his December 13, 1998 statement to police.

A jury found Bishop guilty of capital murder with an underlying felony of kidnapping. He waived his right to sentencing by a jury, and Lee County Circuit

Judge Frank A. Russell sentenced him to death, finding beyond a reasonable doubt that he contemplated the use of lethal force and that the crime was especially heinous, atrocious, or cruel.

## B. Procedural History

Bishop pursued a direct appeal. The Supreme Court of Mississippi affirmed Bishop's conviction and sentence in February 2002 and denied his motion for rehearing in April 2002. See Bishop v. State, 812 So. 2d 934, 937 (Miss. 2002) (en banc). Bishop filed a petition for a writ of certiorari to the United States Supreme Court which was denied on October 21, 2002. See Bishop v. Mississippi, 537 U.S. 976 (2002). Bishop then returned to the Supreme Court of Mississippi and filed an application for post-conviction habeas relief, alleging eight grounds for relief: (1) ineffective assistance of counsel, (2) violation of his Eighth Amendment rights by an unconstitutional imposition of the death penalty, (3) unconstitutional errors and omissions in sentencing, (4) erroneous jury instructions, (5) the failure of the court to classify him as mentally retarded for purposes of exclusion from imposition of the death penalty, (6) erroneous introduction of the 911 tape recording into evidence, (7) disproportionate imposition of the death penalty, and (8) denial of constitutional rights due to the cumulative effect of the errors at trial. The Supreme Court of Mississippi denied his application for habeas relief in July 2004. See Bishop v. State, 882 So. 2d 135, 156 (Miss. 2004) (en banc). Bishop then appealed that denial of post-conviction relief to the United States Supreme Court, which denied his petition for a writ of certiorari. See Bishop v. Mississippi, 543 U.S. 1189 (2005).

Bishop next sought relief by filing a petition for a writ of habeas corpus in the United States District Court for the Northern District of Mississippi on March 28, 2005, which he amended on October 16, 2005. He alleged thirteen grounds for relief. The district court denied Bishop's petition for habeas relief and entered final judgment on August 16, 2007. See Bishop v. Epps, No. 1:04-

CV-319, 2007 WL 2363465, at *36 (N.D. Miss. Aug. 16, 2007). The district court denied Bishop's motion for issuance of a COA dated September 13, 2007, in which he raised four claims, including (1) ineffective assistance of post-conviction counsel, (2) ineffective assistance of trial counsel, (3) improper jury instruction, and (4) improper waiver of jury sentencing. Bishop v. Epps, No. 1:04-CV-319, 2007 WL 2727228, at *1, 5 (N.D. Miss. Sept. 17, 2007). Bishop now moves for issuance of a COA in this Court, raising the same claims he presented to the district court.

## II. STANDARD OF REVIEW

Bishop filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Accordingly, the petition is subject to AEDPA's requirement that Bishop obtain a COA before an appeal can be taken to this Court. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003). In determining whether a COA should be issued, this Court limits its examination to a "threshold inquiry into the underlying merit of [the petitioner's] claims." Id. at 327. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." Id. at 336.

For claims that were rejected on the merits, a COA will be granted if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000). To meet this standard, Bishop must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 336 (internal quotations omitted). The debatability of the underlying constitutional claim is at issue, not the resolution of that debate. Id. at 342.

For claims that have been rejected on procedural grounds, however, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

## III. DISCUSSION

A. Ineffective Assistance of Post-Conviction Counsel[4]

Section 2254 of Title 28 of the United States Code guarantees post-conviction habeas relief only on the basis that a petitioner's conviction or sentence violates the Constitution or laws of the United States. Although individual states, for independent reasons, may decide to create a right to counsel for post-conviction review, the decision has no basis in the Constitution. See, e.g., Jackson v. State, 732 So. 2d 187, 190–91 (Miss. 1999) (categorizing post-conviction efforts as "an appendage, or part, of the death penalty appeal process at the state level" and granting attorney compensation and litigation expenses to petitioner, even though the grant is not required by the Constitution or by Mississippi's Uniform Post-Conviction Collateral Relief Act). But the Supreme Court has "never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions." Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) (citing Johnson v. Avery, 393 U.S. 483, 488 (1969)). The Finley Court wrote: "We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, a fortiori, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate

---

[4] Bishop's claim relating to the qualifications and ineffectiveness of post-conviction counsel can be found in Subpart G of "Claim IV Ineffective Assistance of Counsel," in "Claim V Ineffective Assistance of Post-Conviction Counsel," and in an unnumbered section entitled "Procedural Defaults."

process." Id. Because Bishop has no right to counsel in post-conviction proceedings, he can allege no unconstitutional denial of the effective assistance of post-conviction counsel. See Wainwright v. Torna, 455 U.S. 586, 587–88 (1982); see also 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

## B. Ineffective Assistance of Trial Counsel

Bishop argues that his trial counsel's performance was deficient because they failed to: (1) request psychiatric evaluations and testimony, (2) investigate and present evidence of mitigating circumstances, (3) present a defense in the guilt-innocence phase of the trial, and (4) prepare adequately for trial. In deciding an ineffective-assistance-of-counsel claim, this Court first determines whether the counsel's performance was deficient. Turner v. Quarterman, 481 F.3d 292, 298 (5th Cir. 2007). "This requires [the defendant to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, this Court determines whether the deficient performance prejudiced the defense. Id. "This requires [the defendant to show] that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

In sum, when determining whether to grant Bishop's application for a COA, this Court must determine whether reasonable jurists could debate whether Bishop's counsel's performance was deficient, and, if so, whether that performance prejudiced the defense. The performance of counsel is evaluated in light of what was known to counsel at the time of his conduct, and the petitioner bears the burden of demonstrating that the choices made were not within the realm of trial strategy. See Strickland v. Washington, 466 U.S. 668, 689 (1984).

In some circumstances, the ineffective assistance of counsel can constitute cause sufficient to overcome a procedural default. See Coleman v. Thompson,

501 U.S. 722, 753–54 (1991). But a petitioner making this claim with the purpose of having a substantive claim reviewed on its merits must ordinarily have presented the ineffective-assistance-of-counsel claim as an independent claim in state court before attempting to use it as cause to excuse a procedural defect. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Therefore, if the ineffective-assistance-of-counsel claim has been defaulted, cause and prejudice must be established for the defaulted claim independently before the merits of the underlying claim may be considered.

1. Failure to request psychiatric evaluations and testimony

Bishop contends that his counsel was ineffective in failing to investigate Bishop's mental status at trial and present mitigating evidence of his mental problems. The trial court denied as untimely his request for additional funds for independent psychiatric evaluation after an unfavorable examination at a state hospital. Bishop appealed that denial, but he did not raise a claim for ineffective assistance of counsel based on his attorney's failure to obtain further examination from mental health experts for the purpose of mitigation. Because Bishop did not raise his ineffective-assistance-of-counsel claim before the state court, the district court found his claim to be unexhausted for purposes of collateral review.

Because this claim was denied on procedural grounds, we may issue a COA only if "jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (emphasis added). Bishop acknowledges, but provides no rebuttal to, the district court's finding that the ineffective-assistance-of-counsel claim is procedurally barred. We hold that reasonable jurists would not debate the fact that this claim is procedurally barred because it was never raised before the state court. Therefore, Bishop fails

to satisfy the second prong of our inquiry; we have no need to examine whether reasonable jurists would debate whether he states a valid claim of a denial of a constitutional right.

2. Failure to investigate and present evidence of mitigating circumstances

Bishop argues that we should issue a COA for the resolution of his claim that counsel were ineffective in failing in their duty to investigate and present mitigating evidence. He presented this claim of ineffective assistance to the Supreme Court of Mississippi on post-conviction review, but that court rejected the claim. The district court denied subsequent habeas relief, finding that the decision by the Supreme Court of Mississippi was not unreasonable because Bishop had instructed trial counsel not to present mitigating evidence if he were convicted. Bishop now argues that he was "on board" with his counsel's requests for independent psychiatric experts. He contends that no mitigating evidence was prepared because his motions for experts were denied as untimely. Bishop believes that his counsel was not only deficient by filing the motions untimely, but by failing to collect additional mitigating information for presentation after the verdict of guilty. He rejects the district court's finding that he instructed counsel not to present mitigating information.

A review of the record, however, plainly supports the findings by Supreme Court of Mississippi and the district court. The record reveals that, against the advice of counsel, Bishop voluntarily waived his right to a jury in the sentencing phase, as well as his right to present mitigating evidence.[5] Furthermore, he

[5] The transcript shows that the judge asked Bishop various questions related to his competency and his volition to waive his right to sentencing by a jury. After acknowledging that he wished to waive this right, the judge allowed counsel to ask Bishop questions regarding his decision as well. Bishop answered affirmatively in open court to the following questions by his own counsel:
"Mr. Bishop, have you been advised against doing this by [counsel]?"
"Is this something that you have thought about thoroughly before today?"
"And did you advise me of this earlier on in my representation of you?"
"Do you understand that you might be giving up some issues that may come up

actually requested the death penalty after the jury found him guilty of capital murder.[6]    When a petitioner instructs his counsel not to proffer any mitigating evidence, a claim for failing to investigate further and present mitigating facts cannot stand.   See Schriro v. Landrigan, 127 S. Ct. 1933, 1941–42 (2007). Because the district court reasonably concluded that Bishop had instructed his counsel not to present mitigating evidence on his behalf, the district court did not abuse its discretion in finding that Bishop could not meet statutory requirements for granting habeas relief.   Even if Bishop's counsel uncovered mitigating facts, the state court and the district court both reasonably determined that he would have prohibited his counsel from presenting those facts.    Therefore, we hold that reasonable jurists would not debate this conclusion.

3.  Failure to present a defense in the guilt-innocence phase of the trial

Bishop argues that his counsel was ineffective in presenting an adequate defense because they failed to challenge the testimony of Myhand or to discover timely evidence that Myhand's clothes had been bloodied.  Bishop contends that

---

on the appeal of this case before the Mississippi Supreme Court by waiving this sentencing hearing before the jury?"
"Is it your firm desire to do this?"

In response to further questioning by the judge, Bishop then stated that he felt he had been properly advised by counsel and that he was satisfied with their services. The State then presented aggravating factors for consideration in sentencing.   When asked to present mitigating circumstances, Bishop's counsel responded, "Your Honor, in accordance with our client's wishes, we offer nothing in mitigation."   The judge then asked Bishop directly if he had any desire to offer mitigating facts or circumstances, but Bishop indicated that he had none.

[6] Although Bishop chose not to present any mitigating evidence on his own behalf, he made a few statements to the victim's family and to the judge after the judge read the verdict:

For what I did, I deserve to die.  I ain't gonna ask this Court to spare my life and let me grow old.  I ain't gonna do it. . . .  These people here, some of them would like to kill me.  They can't.  They don't have that authority. . . .  But [judge] you do.  You've got that authority. . . . So I'm asking you to do what they can't do, kill me for what I've done.  I deserve it.  I know it.  I want you to sentence me to death.  That's it.

his counsel "was unprepared to cross-examine the State's star witness [Myhand] who had never been charged with any crime but readily admitted that [Bishop's] involvement in the crime was similar to his own involvement." Bishop believes that "[h]ad the incriminating evidence been timely produced, [he] could have effectively used that information at trial, and more importantly, as well as at a sentencing proceeding." Bishop raised this issue in the form of an ineffective-assistance-of-counsel claim before the Supreme Court of Mississippi, which noted that Bishop had failed to allege any specific facts to show the ineffectiveness of his counsel.

A review of the record reveals that the State called every germane witness to the case, with the exception of Bishop himself. Bishop's counsel cross-examined each witness, and specifically attempted to impeach Myhand's testimony and highlight the weaknesses of the State's case in closing arguments, including arguing that the elements of the crime had not been proven beyond a reasonable doubt. Upon learning that Bishop did not intend to testify himself or present a defense case-in-chief, the court questioned Bishop directly to confirm that this was his decision. Based upon the record, we hold that Bishop has not demonstrated any deficient performance by counsel, and even if counsel's performance was deficient, he has not demonstrated that he was prejudiced by counsel's performance because the only witness left to call was himself and he had admitted his guilt to police upon questioning.

Further, Bishop has labeled his claim as an ineffective-assistance-of-counsel claim, not a claim relating to a discovery violation regarding his receipt of the information that Myhand had blood on his clothes in connection with this crime. We have held that in deciding an ineffective-assistance-of-counsel claim, a court makes no decision on the merits of the underlying substantive claim. See Steward v. Cain, 259 F.3d 374, 377–79 (5th Cir. 2001). Therefore, any claim

relating to underlying substantive merits, such as Bishop's claim of discovery violations, is not presently before this Court.

### 4. Failure to prepare adequately for trial

Bishop argues that we should issue a COA because his counsel were ineffective for failure to prepare adequately for trial. Bishop, however, fails to allege any specific facts or authority to support his claim of ineffective assistance of counsel. Therefore, we hold that he has waived his claim. See FED. R. APP. P. 28(a)(9)(A) (requiring petitioner's arguments to contain his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); Hughes v. Dretke, 412 F.3d 582, 597 (5th Cir. 2005) ("In his petition to this Court, Petitioner merely lists his ineffective assistance complaints in summary fashion, without discussing the legal and factual basis for each complaint. In failing to brief his ineffective assistance of counsel complaints adequately, Petitioner has waived those claims.").

## C. Improper Jury Instruction

Bishop claims that the jury instruction regarding aiding and abetting given at trial allowed him to be convicted of capital murder without the jury finding proof of each element of the crime beyond a reasonable doubt. On direct appeal, the Supreme Court of Mississippi found this claim to be barred because, although Bishop objected to the jury instruction for aiding and abetting as confusing, he did not object to the correctness of the instruction. Bishop v. State, 812 So. 2d 934, 942–44 (Miss. 2002) (en banc). The court nevertheless addressed the merits of his claim and found the instruction to contain harmless error. Id. at 944.

The district court likewise determined that Bishop's claim was procedurally barred for failure to preserve it for appeal, but nevertheless concluded that Bishop was not entitled to habeas relief. Bishop v. Epps, No. 1:04-CV-319, 2007 WL 2363465, at *22 (N.D. Miss. Aug. 16, 2007). "A deficient

jury charge is not grounds for federal habeas relief unless the instruction was, in and of itself, violative of a constitutional right." Id. (citing Estelle v. McGuire, 502 U.S. 62, 71–72 (1991)).  The question in such a collateral proceeding is not whether "the instruction is undesirable, erroneous, or even 'universally condemned.'" Cupp v. Naughten, 414 U.S. 141, 146 (1973).  Rather, the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Id. at 147.

Here, Bishop has not challenged the district court's holding that the claim was procedurally barred from consideration by this Court.  For claims that have been rejected on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Because jurists of reason would have to agree with the district court's procedural ruling, we cannot reach the merits of Bishop's claim, and we decline to issue a COA for this claim.  Bishop fails to meet the second prong of the inquiry and thus we need not examine whether he has stated a violation of a constitutional right regarding the aiding-and-abetting jury instruction.

D.  Improper Waiver of Jury Sentencing

Bishop lastly argues that he was improperly allowed to waive his right to sentencing by a jury, claiming that Mississippi state law prohibits such a waiver. Bishop raised this claim on direct appeal to the Supreme Court of Mississippi, which held that the waiver of jury sentencing in a capital case was allowed, even though no statutory provision expressly provided for such a procedure.  Bishop v. State, 812 So. 2d 934, 945 (Miss. 2002) (en banc).  The district court also denied habeas relief for this claim, stating that Bishop

> was fully informed of the consequences of waiving a jury sentencing, and it is equally clear that he was not deprived of any right to have the jury decide the sentencing issue. He affirmatively chose not to have a jury sentence him and may not now sustain his burden of proof on federal habeas review by suggesting that he never had the right to waive such sentencing.

Bishop, 2007 WL 2363465, at *26. Relying on Blakely v. Washington, 542 U.S. 296, 310 (2004), where the Supreme Court held that "[e]ven a defendant who stands trial may consent to judicial factfinding as to sentence enhancements," the district court subsequently found that reasonable jurists would not debate the fact that Bishop had the right to waive jury sentencing and denied a COA. Bishop v. Epps, No. 1:04-CV-319, 2007 WL 2727228, at *5 (N.D. Miss. Sept. 17, 2007).

The Supreme Court has long held that state courts "have the final authority to interpret and, where they see fit, to reinterpret that State's legislation." Garner v. Louisiana, 368 U.S. 157, 169 (1961). Indeed, a construction of a statute by a state's highest court "puts these words in the statute as definitely as if it had been so amended by the legislature." Winters v. New York, 333 U.S. 507, 514 (1948). We have held that "[s]tate courts are the ultimate expositors of their own states' laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a States's criminal statutes by the courts of that State except in extreme circumstances." Mendiola v. Estelle, 635 F.2d 487, 489 (5th Cir. 1981).[7] Because the Supreme Court of Mississippi's interpretation of its death penalty statutes does not fall into a limited exception for non-reviewability, we hold that Bishop's claim is not cognizable in habeas review and deny the issue of a COA.

## IV. CONCLUSION

---

[7] The only time a federal court may review a state court's interpretation of its statute is when that interpretation is an "obvious subterfuge to evade consideration of a federal issue." Mullaney v. Wilbur, 421 U.S. 684, 691 n.11 (1975) (internal quotations omitted).

Bishop's application for a COA is DENIED.