# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 7, 2010

Lyle W. Cayce
Clerk

No. 09-70009

BENNY JOE STEVENS,

Petitioner - Appellant

v.

CHRISTOPHER B EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT
OF CORRECTIONS,

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Benny Joe Stevens was convicted of capital murder and sentenced to death for the 1998 murders of four people in Mississippi. The district court granted a certificate of appealability ("COA") for Stevens's claim that the prosecutor peremptorily struck a black prospective juror because of her race. Stevens has requested an expansion of the COA for his claim that the state post-conviction process was so ineffective that it violated his right to due process. We AFFIRM the district court's denial of habeas relief and DENY Stevens's request to expand the COA.

No. 09-70009

I.

Stevens shot his daughter, his ex-wife, her husband, her eleven-year-old son, and the son's twelve-year-old playmate as they were surprised by, or as they attempted to escape, his lethal anger. Heads were blown off and bodies were mutilated by the shotgun blasts of this unrepentant killer. These violent murders occurred in Marion County, Mississippi, in 1998. Because the local community was inflamed, Stevens's trial was moved north to Madison County, Mississippi. His daughter was the only survivor. She testified against Stevens at trial. The jury convicted Stevens of four counts of capital murder and he was sentenced to death. His conviction was affirmed on direct appeal and the Supreme Court denied certiorari. *Stevens v. State*, 806 So. 2d 1031 (Miss. 2001), *cert. denied*, 537 U.S. 1232 (2003). Stevens's petition for state post-conviction relief was also denied. *Stevens v. State*, 867 So. 2d 219 (Miss. 2003), *cert. denied*, 543 U.S. 858 (2004). The district court denied Stevens's petition for federal habeas relief, but granted a COA for his claim that the prosecutor engaged in purposeful racial discrimination by striking a black prospective juror. Stevens seeks an expansion of the COA for his claim that the state post-conviction process was so ineffective that it violated his right to due process.

II.

We address first the claim for which the district court granted a COA (racial discrimination in jury selection), and then turn to consider Stevens's request for an expansion of the COA for his due process claim.

A.

The district court granted a COA for Stevens's claim that the prosecutor peremptorily struck a black prospective juror because of her race. Purposeful racial discrimination in the use of peremptory strikes of prospective jurors violates the Equal Protection Clause. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). *Batson* claims are evaluated using a three-step analysis:

No. 09-70009

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell (Miller-El I)*, 537 U.S. 322, 328-29 (2003) (citations omitted). "[I]n considering a *Batson* objection, or in reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear upon the issue of racial animosity must be consulted." *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008) (citing *Miller-El v. Dretke (Miller-El II)*, 545 U.S. 231, 239 (2005))).

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), this court may grant habeas relief on a claim adjudicated on the merits in state court only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The state court's factual findings are presumed to be correct, unless the petitioner rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State used six of its twelve peremptory challenges. Two were used to strike black prospective jurors and four were used to strike white prospective jurors. The jury that was selected consisted of eleven white persons and one black person, with two white alternate jurors.[1]

---

[1] Stevens is white, and all of the victims were white. The Supreme Court has held that a white defendant may object to the race-based exclusion of black jurors. *Powers v. Ohio*, 499 U.S. 400 (1991) (holding that a criminal defendant has standing to object to the race-based exclusion of jurors irrespective of whether the defendant and the excluded jurors are of the same race).

3

No. 09-70009

Ragsdale was the first black prospective juror tendered to the State.[2] The prosecutor initially challenged Ragsdale for cause because he listed a Jackson address on his juror questionnaire.[3] The trial was held in Madison County, and the prosecutor asserted that because Jackson is in Hinds County, Ragsdale was not qualified to serve on the jury. The trial court stated that although Ragsdale had a Jackson address, he could still be registered to vote in Madison County. Accordingly, the trial judge refused to excuse Ragsdale for cause, but allowed the State to exercise a peremptory strike to exclude him from the jury. The prosecutor then stated that Ragsdale should be excused because he "was against the wall, and he was sleeping the whole time, didn't pay attention." The trial judge responded, "I didn't notice that."

Defense counsel asserted a *Batson* claim, arguing that "if [Ragsdale] dozed in the five- or six-hour voir dire ceremony, that's not reason to strike him." The prosecutor responded that there had to be a "pattern of discrimination" before he had to give a reason for the strike. Stevens's counsel did not challenge the prosecutor's incorrect statement of the law.[4] The trial judge stated that "even if it were a pattern, I would say that the fact that they thought he had been sleeping and that he was from a different county, residing in a different county, that would be a sufficient reason to excuse him. But it will be a strike rather than for cause." Stevens apparently does not dispute that Ragsdale slept during voir dire. In addition to defense counsel's remarks at the time of the strike, in his reply brief on direct appeal, Stevens stated that "[a] person who might doze

---

[2] The prospective jurors in this case were questioned as a group. Counsel exercised their peremptory strikes at the conclusion of voir dire.

[3] Ragsdale's juror questionnaire is not in the record.

[4] Although an inference of discrimination may be drawn from a pattern of strikes, *see Batson*, 476 U.S. at 97, "the Constitution forbids striking even a single prospective juror for a discriminatory purpose." *Snyder*, 552 U.S. at 478 (brackets, internal quotation marks, and citation omitted).

4

in a warm room during a long voir dire process must not be denied the right to participate in the trial."

Olive was the second black juror tendered to and peremptorily struck by the State. Stevens raised a *Batson* claim, arguing that because Olive was the second black prospective juror struck by the State, "it's showing a pattern." The trial court asked the prosecutor to state the reason for the strike. The prosecutor argued that there was no pattern because Ragsdale was observed sleeping and had a Jackson address. The prosecutor said that he struck Olive because she "was inattentive" and did not complete her juror questionnaire:

> She didn't fill out half of it. She did not follow the directions of the Court. And that backs up my opinion and observation that she was inattentive. She responded to no questions from either side, and she didn't fill out her complete form.

Stevens's counsel pointed out that many of the prospective jurors did not fully complete the juror questionnaires.[5] The prosecutor responded,

> Well, I'm just backing up my original statement she was inattentive and looked like she was preoccupied the whole time. And she didn't fill out her form. The second page, Judge.

The trial court found that Olive had completed her questionnaire, leaving blank only the question asking for membership in fraternal organizations. The prosecutor responded:

> My main reason was that she was inattentive, seemed to be totally preoccupied. And, again, we're not showing a pattern of discrimination.

Defense counsel did not challenge the prosecutor's assertion that Olive was inattentive or preoccupied. In fact, defense counsel seemed to acknowledge that the prosecutor thought Olive was inattentive; he stated: "We don't think that's

---

[5] Four of the white persons who served on the jury left one or more of the questions blank, including the same question that Olive left blank. Three other white jurors failed to fully answer the questionnaire, leaving at least one question blank.

No. 09-70009

enough reason for them to strike her because they think she was unattentive [*sic*] and didn't fill out her form."

The trial judge did not make any explicit ruling with respect to whether Olive was inattentive or whether he believed that the prosecutor thought she was inattentive. Instead, the judge asked whether there were more black prospective jurors in the jury pool. The prosecutor responded that the State planned to accept Brooks. However, Brooks had already been struck for cause the previous day. Defense counsel pointed out that there was not another black person on the panel until number 41, Melvin Bouldin. The prosecutor said the State would accept Bouldin. The Court ruled: "With the understanding you're going to accept Bouldin, then I'm going to go ahead and allow this one to be struck as not showing a pattern, then."

On direct appeal, the Mississippi Supreme Court stated:

> We hold that the fact that juror Rag[s]dale no longer resided in Madison County to be a valid race neutral reason to allow the trial court to grant the State's peremptory strike of juror Rag[s]dale. Residency is not a characterization based on race. In order to be qualified as a competent juror, residency in the county is required. . . .
>
>     . . . .
>
> It may be argued that one or all of the race-neutral reasons [for the strike of Olive] expressed by the defense [*sic*] are acceptable. However, it must be remembered that this Court has held that the trial judge is afforded great deference in determining if the expressed reasons for exclusion of a venire-person from the challenged party is [*sic*] in fact race-neutral. . . .
>
> The trial judge witnessed the challenges in court and could observe the demeanor of all involved as well as all other relevant circumstances in the case. We find that the trial court's findings are not clearly erroneous or against the overwhelming weight of the evidence. Therefore this contention is without merit.

6

*Stevens v. State*, 806 So. 2d at 1047-48 (paragraph numbers omitted).

Stevens raised his *Batson* claim again in his state application for post-conviction relief. The Mississippi Supreme Court held that the issue had been considered and rejected on direct appeal and was therefore "barred from consideration under the doctrine of res judicata." *Stevens v. State*, 867 So. 2d at 222.

Stevens raised his *Batson* claim again in his federal habeas petition. The district court observed that the trial court and counsel for both sides mistakenly thought that *Batson* requires a finding that the prosecutor has engaged in a pattern of discriminating against black jurors. However, the district court concluded that the Mississippi Supreme Court had properly applied *Batson* to the facts, without reference to whether the prosecutor had engaged in a pattern of discrimination.

With respect to the strike of Ragsdale, the district court noted that, although the parties did not mention it, George Patterson, a black prospective juror who listed a Jackson address on his juror questionnaire, was excused for cause on the first day of jury selection (before the strikes of Ragsdale and Olive). The record reflects that Patterson had notified the trial judge and one of the prosecutors that he lived in Hinds County. After objecting initially, defense counsel stated that he would not object if Patterson did not live in Madison County. The district court rejected Stevens's contention that because the trial court had qualified the entire venire at the beginning of voir dire, Ragsdale was found to have been competent to serve on the jury and could not have been disqualified based on his residence in another county. The district court noted that Stevens's contention was not raised in the trial court and that it ignored the fact that George Patterson was also struck, after the jury was qualified, because he lived in Hinds County. The district court held that the record does not support Stevens's claim that the trial court rejected the prosecutor's assertion

that Ragsdale lived in another county. According to the district court, the trial court merely stated that Ragsdale "could still be a registered voter" in Madison County. Furthermore, the district court stated that the trial judge did not reject the prosecutor's claim that Ragsdale slept through voir dire, but only stated that he had not noticed it.

The district court rejected Stevens's contention that the prosecutor's failure to question Ragsdale about his address suggested that this reason given by the prosecutor for the strike was pretextual. The district court stated that there was nothing in the record to cast doubt on either Ragsdale's actual residence or whether he was sleeping during voir dire. Furthermore, Patterson was excused for a similar reason the day before, with no further examination and no objection by the defense and there was no indication that similarly-situated white jurors were accepted.[6] Accordingly, the district court concluded that the record does not support Stevens's claim that the Mississippi Supreme Court's findings with regard to Ragsdale were unreasonable.

With respect to Olive, the district court stated that the prosecutor's initial reason for the strike was that Olive had been inattentive, and the fact that the other reason (failure to complete the juror questionnaire) was rejected by the trial court does not mandate a finding that the prosecutor's reliance on inattentiveness as a reason for the strike was pretextual. The district court found that the prosecutor's acceptance of Melvin Bouldin as a juror supported the finding of non-discriminatory intent because the prosecutor committed to the selection of a black juror early in the process, when he was exercising his second strike.

---

[6] The State accepted at least one white prospective juror who listed a street address, but no city, on her juror questionnaire. She did not serve on the jury, however, because the defense struck her peremptorily. Bouldin, the only black juror accepted by the State, also listed a street address but no city on his questionnaire. No one raised any questions about his residence.

The district court noted that Stevens's argument that the district attorney's office that prosecuted his case had a history of racial discrimination in jury selection in other cases was not raised at trial or on direct appeal, although it was included in his application for post-conviction relief, which the Mississippi Supreme Court denied on grounds of res judicata. The district court stated that although it could have held that the argument was barred from consideration, out of an abundance of caution, it analyzed the issue on its merits and rejected it, stating:

> There were two occasions when the Mississippi Supreme Court found that discrimination occurred in the Fifteenth Judicial District in jury selection over the ten years prior to the trial. There had been hundreds of other trials in the District, and no other finding of discrimination has been made. The two attorneys who had been charged did not participate in the trial, and the attorneys who did have never been found to have used discriminatory practices in jury selection. Additionally, no pattern of discrimination had been shown, and the challenged juror was not the same race as the defendant. While there may be some smoke left over from prior years, there was nothing shown in Stevens's case that indicated that any discriminatory tactics were used in jury selection by the district attorney's office.

Stevens requested, and the district court granted, a COA only with respect to the strike of Olive. The State therefore contends that this court does not have jurisdiction to consider the strike of Ragsdale. *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (court has jurisdiction to address only the issue specified in the COA granted by the district court). Stevens argues, however, that the prosecutor's treatment of Ragsdale is relevant to the analysis of the strike against Olive.

Although Stevens has challenged the strike of Ragsdale throughout the proceedings (both trial and post-conviction), this is his first attempt to argue that the strike of Ragsdale has any bearing on the analysis of the strike of Olive (other than his assertion in the trial court that the strike of Olive showed a

"pattern" based on the previous strike of Ragsdale). When attempting to prove purposeful discrimination under the third step of the *Batson* analysis, the Supreme Court has said that the "defendant may rely on 'all relevant circumstances' to raise an inference of purposeful discrimination." *Miller-El II*, 545 U.S. at 240 (quoting *Batson*, 476 U.S. at 96-97); *see also Hernandez v. New York*, 500 U.S. 352, 363 (1991) (an "invidious discriminatory purpose may often be inferred from the totality of the relevant facts") (brackets, internal quotation marks, and citation omitted). In *Reed v. Quarterman*, 555 F.3d 364, 372-75 (5th Cir. 2009), this court concluded that *Miller-El II* requires a comparative juror analysis even if it was not presented in state court. In *Snyder*, the Supreme Court stated that because "all of the circumstances that bear upon the issue of racial animosity must be consulted," the court may consider the strike of one juror for any relevance it might have regarding the strike of another juror. 552 U.S. at 478 (citing *Miller-El II*, 545 U.S. at 239). Accordingly, Stevens is not precluded from relying on the circumstances surrounding the strike of Ragsdale to argue that the strike of Olive was discriminatory, notwithstanding the fact that he requested and was granted a COA limited to the strike of Olive.

Stevens contends that there is no evidence that Ragsdale was not a resident of Madison County and that, if there were, the trial judge would have been required to grant the State's challenge for cause. He argues that the district court's reliance on the fact that George Patterson had been struck for cause for similar reasons is misplaced. According to Stevens, Patterson was struck for cause because he notified the court and counsel that he was a resident of Hinds County. Stevens points out that part of the City of Jackson is within Madison County, so a person can have a Jackson address but still live in Madison County. Stevens also points out that thirty prospective jurors did not list any city on the address portion of their juror questionnaires. He asserts that

the prosecutor's failure to question them or seek to strike them on the issue of residence is further evidence of a discriminatory motive as to Ragsdale.

The fact that the prosecutor did not question Ragsdale about his residence is some evidence suggesting that his explanation is pretextual. *See Miller-El II*, 545 U.S. at 246 (the prosecution's failure to conduct any meaningful voir dire examination on a subject it claims to be "concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination") (internal quotation marks and citation omitted); *Reed*, 555 F.3d at 376 ("if the State asserts that it was concerned about a particular characteristic but did not engage in meaningful voir dire examination on that subject, then the State's failure to question the juror on that topic is some evidence that the asserted reason was a pretext for discrimination"). Furthermore, the record reflects that the prosecutor accepted at least two other prospective jurors who did not list a city when providing their addresses on their juror questionnaires. However, one of those two jurors (Melvin Bouldin) is black. Accordingly, this is not very strong evidence of pretext with respect to the strike of Ragsdale. *See id.* ("If the State asserts that it struck a black juror with a particular characteristic, and it also accepted nonblack jurors with that same characteristic, this is evidence that the asserted justification was a pretext for discrimination, even if the two jurors are dissimilar in other respects.").

Nevertheless, Stevens has not shown purposeful discrimination in the strike of Ragsdale. Accordingly, the prosecutor's strike of Ragsdale does not support Stevens's claim that the prosecutor struck Olive because of her race. The first flaw in Stevens's argument is that Ragsdale's residence was not the only basis for the strike. The prosecutor's second reason was that Ragsdale was observed sleeping during voir dire. Second, the trial judge's ruling indicates that he found the prosecutor's reasons credible: "I would say that the fact that they thought he had been sleeping and that he was from a different county, residing

11

in a different county, that would be a sufficient reason to excuse him." As we have already noted, Stevens did not challenge the prosecutor's assertion that Ragsdale was sleeping; instead, he argued that sleeping was not a reason to exclude Ragsdale from jury service. Accordingly, even if we were to assume that the first reason given for the strike (residence) is pretextual, Stevens did not dispute the prosecutor's additional reason for the strike (sleeping during voir dire). *See Woodward v. Epps*, 580 F.3d 318, 340 (5th Cir. 2009) (holding that where prosecutor gave more than one reason for striking juror, and court could not presume, in the absence of a trial court finding, that the trial court credited the prosecutor's assertion of demeanor as one of those reasons, petitioner's *Batson* claim nevertheless failed because petitioner offered no rebuttal to prosecutor's first race-neutral reason for the strike) ; *United States v. Brown*, 553 F.3d 768, 796 (5th Cir. 2008) (where prosecutor struck a black venire member who had a conviction for resisting arrest but did not strike a white venire member who had a DUI conviction, defendant's *Batson* claim nevertheless failed because the prosecutor gave a second, legitimate reason for striking the black juror:   his failure to report on his juror questionnaire a second conviction for assault).

We now turn to consider Stevens's claim of discrimination with respect to the strike of Olive. He contends that the trial judge did not make a finding that Olive was inattentive, but instead allowed the strike because the prosecutor had agreed to accept another black juror (Melvin Bouldin). Stevens argues that this "trading" of one black juror for another black juror violates the equal protection clause, because Olive was struck, not only because of her own race, but also because of Bouldin's race; that is, the trial judge allowed Olive to be struck only because the State promised to accept the next *black* juror, Bouldin. Thus, according to Stevens, Bouldin's race was the only reason that the trial judge allowed Olive to be struck.

12

The State responds that although the trial court rejected one of the reasons given by the prosecution for striking Olive (incomplete juror questionnaire), it accepted the other (inattentiveness). The State also asserts that there was no trade of one black juror for another because, at the time that Olive was struck, there was no assurance that jury selection would not be completed before Bouldin was reached in the selection process.

The record contains no explicit support for the State's assertion that the trial court allowed the strike of Olive based on inattentiveness. The only reason that the trial court gave for allowing the strike was that the prosecutor had agreed to accept the next black juror (Bouldin). The trial judge stated: "With the understanding you're going to accept Bouldin, then I'm going to go ahead and allow this one to be struck as not showing a pattern." The trial judge made no finding on the record that Olive was inattentive or that the prosecutor was credible in asserting that he struck Olive for inattentiveness. Nevertheless, because the trial court allowed Olive to be struck after having rejected the prosecutor's assertion that Olive did not complete her juror questionnaire, it was not unreasonable for the Mississippi Supreme Court to conclude that the trial court implicitly credited the prosecutor's assertion that he struck Olive because she was inattentive.

"As a federal habeas court, we are bound by the state [trial] court's factual findings, both implicit and explicit." *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004). Furthermore, we may not grant habeas relief unless the Mississippi Supreme Court's adjudication of Stevens's *Batson* claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The AEDPA thus requires that we defer

13

not only to the Mississippi Supreme Court's determination that the trial court implicitly found that the prosecutor did not engage in purposeful racial discrimination in peremptorily striking Olive, but also to the trial court's implicit factual finding that the prosecutor was credible when he stated that the main reason he struck Olive was because he thought she was inattentive.

Stevens argues, however, that in the absence of a finding by the trial judge, this court cannot presume that the trial judge credited the prosecutor's assertion that Olive was inattentive. In *Snyder*, the Supreme Court said that in the absence of a finding by the trial judge, the Court "cannot presume that the trial judge credited" the prosecutor's assertion that the prospective juror was nervous. 552 U.S. at 479. The Court stated that when a peremptory challenge is based on a potential juror's demeanor, "the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Id*. at 477. In *Thaler v. Haynes*, 130 S. Ct. 1171 (2010), the Supreme Court summarily reversed this court's interpretation of *Batson* and *Snyder* as establishing a rule "that a demeanor-based explanation for a peremptory challenge must be rejected unless the judge personally observed and recalls the relevant aspect of the prospective juror's demeanor." *Id*. at 1174. The Supreme Court explained that the problem in *Snyder* was not that the trial judge did not observe or could not recall the juror's demeanor. *Id*. Instead, the problem was that the prosecutor gave two reasons for the strike, "one of which was based on demeanor (*i.e.*, that the juror had appeared to be nervous), and the trial judge overruled the *Batson* objection without explanation." *Id*. (citing *Snyder*, 552 U.S. at 478-79). The record did not support the explanation that was not based on demeanor and, in the absence of a finding by the trial judge, the Court stated that it could not "presume that the

trial judge credited" the prosecutor's assertion that the prospective juror was nervous. *See Snyder*, 552 U.S. at 479.

Stevens's case is similar to *Snyder* in that the trial court in Stevens's case made no finding with respect to the demeanor-based reason (inattentiveness) for the peremptory strike of Olive. Its only stated reason for allowing the strike was the prosecutor's agreement to accept the next black prospective juror, Bouldin. Stevens thus relies on *Snyder* to argue that, because of the absence of any finding by the trial judge, it was unreasonable for the Mississippi Supreme Court to "presume that the trial judge credited" the prosecutor's assertion that Olive was inattentive.

We find Stevens's case to be distinguishable from *Snyder*. It is true that there are some similarities: In both cases, the prosecutors offered two reasons for the challenged strikes, and in both cases, one of the reasons offered for each strike was based on the prospective juror's demeanor (nervousness in *Snyder* and inattentiveness in Stevens's case). The similarities end there, however. In *Snyder*, the trial judge overruled the *Batson* objection without making any findings as to either of the reasons given by the prosecutor for the strike. The Supreme Court concluded that the non-demeanor-based reason given by the prosecutor in *Snyder* was pretextual, and it refused to presume that the trial court had allowed the strike based on the juror's demeanor in the absence of any finding by the trial court. In Stevens's case, unlike in *Snyder*, the trial court expressly found that one of the reasons offered by the prosecutor for the strike of Olive—failure to complete the juror questionnaire—was invalid, but it nevertheless allowed the strike. Under these circumstances, the Mississippi Supreme Court did not unreasonably determine that because the trial judge allowed the strike, it must have implicitly credited the prosecutor's assertion that he believed Olive was inattentive. This implicit factual determination is presumptively correct under the AEDPA. *Young*, 356 F.3d at 629.

15

No. 09-70009

Furthermore, although Stevens's counsel challenged the prosecutor's assertion that Olive did not complete her juror questionnaire in the trial court, he did not make any attempt to rebut the prosecutor's assertion that Olive was inattentive. Instead, as we have noted, he argued that inattentiveness was not "enough reason for them to strike her." This court has rejected *Batson* claims involving similar circumstances, where more than one reason is given for a strike, and the *Batson* challenger fails to rebut one of the reasons. In *Woodward*, the prosecutor explained that he struck one prospective juror because she was unresponsive, hostile, and had relatives who worked in the prison system. 580 F.3d at 340. Because the trial court made no finding with respect to hostility, our court did not presume that the trial court credited the prosecutor's assertion of that reason for the strike. *Id.* Nevertheless, because Woodward did not offer any rebuttal to the prosecutor's assertion that the prospective juror was unresponsive, our court concluded that the state court's decision that the strike was not discriminatory was not unreasonable. *Id.* In *Brown*, the prosecutor struck a black venire member who had a conviction for resisting arrest, but did not strike a white venire member who had a DUI conviction. 553 F.3d at 796. This court concluded that the defendant's *Batson* claim nevertheless failed, because the prosecutor had given a second, legitimate reason for the strike of the black venire member: his failure to report on his juror questionnaire a second, more recent criminal conviction. *Id.*

The final reason Stevens cites in support of his *Batson* claim is the district attorney's office's history of racial discrimination in jury selection.[7] The alleged

_____

[7] As further evidence of the prosecutor's racial motive in striking Olive, Stevens points to a comment that the prosecutor made in connection with the prosecutor's *Batson* claim that the defense was discriminating against female jurors on the basis of their gender. After defense counsel explained that he struck a female juror because her middle name indicated that she might be related to the warden at the prison in Columbia, Mississippi, the prosecutor responded: "If that's acceptable, then every challenge we call for a black man, will [*sic*] use their middle name and say he's related to somebody on death row." The State counters that

16

prior pattern of discrimination in this county also was not raised before the state court and, therefore, is not before us.  Were we to examine it, we find no reversible error in the district court's assessment of this evidence.

Having considered all of the circumstances, we conclude that the Mississippi Supreme Court's decision that the trial judge allowed the strike of Olive because it implicitly credited the prosecutor's assertion of inattentiveness, and its decision to defer to the trial judge's implicit factual finding, is not an unreasonable application of *Batson* and *Snyder*.  Inattentiveness is a race-neutral reason.  Defense counsel did not dispute the prosecutor's assertion that Olive was inattentive; instead, he argued that inattentiveness was not a valid reason to strike her.  Although the trial court did not make an express factual determination that Olive was inattentive, or that the prosecutor credibly asserted that reason as a basis for the strike, it nevertheless permitted the strike after having rejected the only other reason that the prosecutor offered for the strike.  Under AEDPA, deference is due to the trial judge's implicit finding that the prosecutor credibly asserted inattentiveness as a reason for the strike.  We now turn to consider Stevens's request for an expansion of the COA.

B.

Stevens asks us to expand the COA to include his claim that he was denied his right to due process because, although counsel was appointed to represent him in state post-conviction proceedings, as is his right under Mississippi law, that representation was so extremely deficient that he was denied the possibility of meaningful relief.

---

the prosecutor was not making a racial remark, but instead was attempting to show a lack of basis for the defense strikes of females.  The State asserts that, taken in context, the comment does not show any racial animus and it is not an indication that the prosecutor's reason for the strike of Olive was pretextual.  We note that Stevens did not cite this remark by the prosecutor in support of his *Batson* claim in the trial court and thus we will not consider it.

No. 09-70009

To obtain a COA, Stevens must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, he must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El I*, 537 U.S. at 327 (citation omitted). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338. The Supreme Court has instructed that, in making the decision whether to grant a COA, the court must limit its examination to a "threshold inquiry," which consists of "an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* at 327, 336. The court cannot deny a COA because it believes the petitioner ultimately will not prevail on the merits of his claims. *Id.* at 337. On the other hand, however, "issuance of a COA must not be *pro forma* or a matter of course." *Id.* "While the nature of a capital case is not of itself sufficient to warrant the issuance of a COA, in a death penalty case any doubts as to whether a COA should issue must be resolved in the petitioner's favor." *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005) (brackets, internal quotation marks, and citations omitted).

Stevens acknowledges that there is no constitutional right to the provision of capital post-conviction counsel. He contends, however, that the Mississippi Supreme Court held that the Mississippi Constitution provides such a right. He asserts that the Mississippi Legislature, by creating the Mississippi Office of Capital Post-Conviction Counsel (MOCPCC) to provide legal representation for death-sentenced prisoners in post-conviction proceedings, recognized that right and, in so doing, created a life and liberty interest that is protected by the due process clause. He insists that he is not arguing that his state post-conviction counsel was ineffective. Instead, he asserts that he was denied his state law

18

right to the assistance of post-conviction counsel as a result of inadequacies in the MOCPCC, including lack of funding, personnel problems, and interference by the Chief Justice of the Mississippi Supreme Court and the Mississippi Attorney General's office.

Stevens relies on *Jackson v. State*, 732 So. 2d 187 (Miss. 1999), for the proposition that in Mississippi, the state post-conviction process is part of the appeal process in death penalty cases. In *Jackson*, the Mississippi Supreme Court stated that "in capital cases, state post-conviction efforts, though collateral, have become part of the death penalty appeal process at the state level." *Id.* at 191. Stevens contends that this fact distinguishes his case from prior cases which have held that a prisoner is not entitled to the effective assistance of counsel in post-conviction proceedings. Stevens asserts that because he had a right, under state law, to state post-conviction counsel as part of the appeal process, the Due Process Clause guarantees that it cannot be interfered with by the State.

"States have no obligation to provide this [post-conviction] avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (citation omitted). Ineffectiveness of post-conviction counsel cannot be the grounds for federal habeas relief. *Martinez v. Johnson*, 255 F.3d 229, 241 (5th Cir. 2001); *see also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Infirmities in state habeas proceedings do not constitute grounds for relief in federal court. *Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001) (holding that ineffective state process and ineffective state habeas counsel did not excuse petitioner from exhausting claims in state court).

No. 09-70009

The district court's opinion contains a discussion of the "troubled history" of the MOCPCC, including inadequate staffing and a lack of adequate funding. The first MOCPCC director, C. Jackson Williams, submitted an affidavit in which he explained the difficulties that he experienced during his tenure as director. Because he thought that the workload could not be handled effectively, Williams contracted with private attorneys to represent some of the petitioners. However, the account from which those attorneys were to be paid was never funded by the Mississippi Legislature. Furthermore, the Chief Justice of the Mississippi Supreme Court discouraged Williams from hiring attorneys from outside the State, despite the fact that there were few attorneys within the state who were qualified to represent capital petitioners. In addition, the Mississippi Attorney General's Office opposed the appointment of private counsel in some cases, on the grounds that they were "unqualified" to handle death penalty cases. The district court found that "there is no doubt that the Office was operating with a substantial workload and that the State of Mississippi's involvement in removing private counsel from cases added to the work required from the Office."

On September 28, 2001, shortly after Stevens's conviction was affirmed on direct appeal on September 13, 2001, the Mississippi Supreme Court ordered the MOCPCC to select counsel to represent Stevens in state post-conviction proceedings. On October 22, 2001, MOCPCC Director Williams moved for additional time to locate counsel for Stevens. In the motion, Williams stated that the MOCPCC could not accept any new clients for approximately six weeks and that he could not exercise his statutory authority to locate private counsel to represent Stevens because the Legislature had not appropriated any money for the Special Capital Post-Conviction Counsel Fund. In December 2001, Williams resigned his position as MOCPCC director and moved to withdraw as

20

counsel for Stevens. When Williams left, the MOCPCC had been assigned twenty-seven cases.

Robert Ryan was appointed as director of the MOCPCC in January 2002. On March 13, 2002, Ryan wrote to the Mississippi Supreme Court, stating that the MOCPCC would represent Stevens in post-conviction proceedings. In October 2002, the MOCPCC lost its only experienced investigator. The two MOCPCC staff attorneys had both resigned from their positions by January 2003, and Ryan was the only attorney in the office until mid-February. Ryan filed four petitions, including the one for Stevens, in a one-week period in February 2003. He filed a supplemental petition on May 5, 2003.

Stevens contends that because of the staffing and funding problems at the MOCPCC, and the interference by the Mississippi Supreme Court and the Attorney General's Office, the attorney who filed his state post-conviction petition did not have time to do it right and did not have any discovery or investigation, and thus he had no possibility of obtaining meaningful relief. Stevens insists that he is not asserting that there were infirmities in the state habeas process; instead, he is arguing that there was a complete breakdown in the state process in that the MOCPCC was unable to provide adequate representation because of the overwhelming caseload, inadequate staffing and funding, and interference by the Mississippi Supreme Court and the Attorney General's Office.

The district court found that there was a period during which the MOCPCC was understaffed, underfunded, and overloaded with cases, and that the situation was aggravated by the State's interference in some petitioners' representation. However, the district court found that Stevens's case was not assigned to the MOCPCC until late in that period and, by the time his post-conviction petition was filed, the workload had lessened and new attorneys had been hired. Furthermore, Stevens was permitted to file a supplemental petition.

The district court concluded that, although the history of the MOCPCC presents troubling questions, Stevens's argument suffers from significant weaknesses: First, the Mississippi Supreme Court said that its opinion in *Jackson* did not establish a right to competent post-conviction counsel. *See Wiley v. State*, 842 So. 2d 1280, 1285 (Miss. 2003) (*Jackson v. State* did not create a constitutional right to post-conviction counsel or create any liberty interest in having state-compensated post-conviction counsel). Second, the State was not constitutionally obligated even to provide post-conviction review. Finally, it was not clear that Stevens suffered any individual prejudice from the problems in the MOCPCC, because both a petition and a supplemental petition were filed on his behalf.

Reasonable jurists would not find the district court's decision on this issue debatable. Arguments similar to those raised by Stevens have been rejected repeatedly by this court. In *Matchett v. Dretke*, 380 F.3d 844 (5th Cir. 2004), this court denied a COA, noting that this court has, "on at least two occasions, . . . rejected contentions like Matchett's that Texas's statutory provision of post-conviction counsel to death-row offenders requires that the post-conviction process must comply with the Due Process Clause." *Id*. at 849 (citing *Ogan v. Cockrell*, 297 F.3d 349, 357 (5th Cir. 2002); *In re Goff*, 250 F.3d 273, 275-76 (5th Cir. 2001)). In *Ogan*, this court denied a COA for the petitioner's claim that "the Texas courts' appointment of incompetent counsel was a violation of his statutory right to competent counsel, as well as a violation of his due process rights under the Fourteenth Amendment." 297 F.3d at 357. Ogan's argument was similar to Stevens's: He asserted that because Texas had chosen to provide post-conviction review and had guaranteed the appointment of counsel, "it must follow the statutory requirements in accordance with due process." *Id*.

In *Bishop v. Epps*, a Mississippi death row inmate argued that

> due to the actions of the [Mississippi Supreme C]ourt in denying him additional time, any potential procedural defaults that might here be imposed against his claims should be excused due to his inability to raise such claims at the State court level. Petitioner asserts that the heavy workload of the [MOCPCC], combined with the lack of qualifications of post-conviction counsel, denied him any possible redress to his constitutional violations.

*Bishop v. Epps*, No. 1:04CV319-MPM, 2007 WL 2363465, at *6 (N.D. Miss. Aug. 16, 2007) (unpublished). The district court denied habeas relief, and this court denied a COA, characterizing the claim as an ineffective counsel claim. *Bishop v. Epps*, 265 F. App'x 285, 290 (5th Cir. 2008) (unpublished) ("Because Bishop has no right to counsel in post-conviction proceedings, he can allege no unconstitutional denial of the effective assistance of post-conviction counsel.").

Other courts have also rejected due process challenges similar to the one asserted by Stevens. *See Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996) ("Moran may not avoid our holding that a petitioner is not entitled to effective assistance of counsel during habeas proceedings by alleging a due process, rather than a Sixth Amendment, violation."); *Simpson v. Norris*, 490 F.3d 1029, 1033 (8th Cir. 2007) (rejecting habeas petitioner's claim that because state statute "required the state to appoint an attorney to represent him in post-conviction proceedings, the state had a duty to provide him with effective assistance of counsel and its failure to do so deprived him of due process"). In *Simpson*, the Eighth Circuit said that in *Pennsylvania v. Finley*, 481 U.S. 551 (1987), "[t]he Supreme Court has . . . left little doubt as to its view that a state's decision to grant a right to counsel in post-conviction proceedings does not give rise to a due process claim if counsel performs deficiently." 490 F.3d at 1034.

Accordingly, we DENY Stevens's request to expand the COA.

III.

No. 09-70009

For the foregoing reasons, the district court's denial of habeas relief on Stevens's *Batson* claim is AFFIRMED, and Stevens's request for an expanded COA is DENIED.

No. 09-70009

HAYNES, Circuit Judge, concurring in the judgment:

I concur in the denial of the request for an expanded COA. Although I concur in the decision to affirm the district court regarding the strike of juror Olive, I do so only because of the highly deferential review standard required by AEDPA. The state trial court's approach to deciding the *Batson* challenge leaves much to be desired, and some of the comments by counsel and colloquies in the transcript of the trial are disturbing and inappropriate. Had this been a direct appeal of the state trial court's decision, my decision very likely would have been different. Applying the precedents of the Supreme Court and our court construing AEDPA, however, I am required to concur in the affirmance.